WILLIAM J. WOOLSEY and Wife *vs.* GEBHARD BOHN and another.

July 15, 1889.

Res Judicata—Judgment of Dismissal in Action to have a Mortgage Adjudged Paid.—In an action to cancel a mortgage upon the ground that its conditions have been fully satisfied, that being the only issue, and no affirmative relief being sought by the defendant, a finding that a specific amount is still unpaid, and that the action should therefore be dismissed, will not conclude the parties in a subsequent litigation, involving an issue as to the amount unpaid.

Evidence—Cash-Books—Journals.—Cash-books kept in the ordinary way are admissible as evidence, the proof prescribed by statute as to books of account being made, although the entries in question are not in terms charges against a person named as for money paid to him. Account-books called "journals," consisting of transcripts from the "stubs" of check-books, made several days after the giving of the checks, and the check-books and checks having been preserved, are not admissible in evidence.

Mechanic's Lien—Evidence that Lumber Furnished was not "Required."—A statutory lien being charged for lumber furnished for the construction of a building, evidence merely that the amount of lumber claimed to have been furnished was not "required" for the construction is inadmissible.

Appeal by plaintiffs from an order of the district court for Ramsey county, *Brill*, J., presiding, refusing a new trial after a trial by Hon. L. M. Vilas, as referee.

*Charles A. Willard*, for appellants.

*M. D. Munn*, for respondents.

DICKINSON, J. The plaintiff William J. Woolsey is engaged in business as a contractor for the construction of buildings. He having contracted for the erection of a certain building, he executed a bond

to the owners of the property (Kiefer, Macklett, and Herbst) for their protection against statutory liens on account of labor or material furnished for the construction of the building under that contract. The defendant Bohn executed this bond as his surety. In the course of the construction Woolsey incurred a considerable indebtedness, which was chargeable by lien upon the property, and for which liens were filed. The defendant Bohn demanded from Woolsey security for his protection, on account of his liability as surety upon the bond. For this purpose Woolsey executed to the defendant his promissory note for $3,000, and with his wife, the other plaintiff, executed a mortgage upon real estate in terms securing the payment of the promissory note. The complaint alleges that the debts for which the defendant was liable under the bond have been fully paid, and by this action the cancellation of the mortgage is sought as a cloud upon the plaintiff's title, and that the defendant be enjoined from foreclosing the same. It appears that the note and mortgage were afterwards assigned to the Bohn Manufacturing Company. The defendants claim that they, and not the plaintiff, paid and satisfied the lien debts of the plaintiff in excess of the sum of $3,000, and that the note and mortgage constitute a still subsisting and enforceable security. They sought no affirmative relief. There is no real controversy as to the fact that the note and mortgage were given to secure and indemnify Bohn from loss by reason of his obligation upon the plaintiff's bond. At the time the mortgage was given, and before the contract was completely performed, it was agreed that Bohn should receive all money that should become payable to the plaintiff under his contract for construction, and should pay all claims against him arising from the performance of the contract which might be chargeable as liens upon the property. The referee who tried the cause found as a fact that Bohn, or the company which by consent assumed his place, in the performance of this agreement paid out more than $3,000 in excess of what they received, and that the mortage in question is a valid and subsisting incumbrance upon the mortgaged premises for the full amount expressed therein. Judgment was therefore directed for the dismissal of the action. This appeal is from an order refusing a new trial.

The purposes and scope of this action are such that it does not involve directly the determination of the amount which the defendant may have expended beyond the amount received. An adjudication was sought only as to whether or not the claims for which the defendant Bohn was or might become liable had been fully satisfied by the application of the money of the plaintiff, so that the defendants had no right to longer retain or to enforce the mortgage for their indemnity. That was the issue made by the pleadings. The evidence in the case was relevant to that issue, and cannot be regarded as enlarging, by the consent of the parties, the scope of the action, or the proper subject of inquiry presented by the pleadings. *Payette* v. *Day*, 37 Minn. 366, (34 N. W. Rep. 592,) and cases cited. That issue—the matter controverted and to be decided—is not changed or enlarged by the fact that the evidence offered on the one hand to show that there was no unsatisfied obligation such as the mortgage was given to secure, and on the other hand to show that there was a still subsisting obligation, also disclosed incidentally the extent or amount of that obligation or debt. Neither party had sought an adjudication as to that, and the finding of such a fact outside the issues would not conclude the parties in a subsequent litigation. *Campbell* v. *Consalus*, 25 N. Y. 613; *Lewis & Nelson's Appeal*, 67 Pa. St. 153, 166; *Marvin* v. *Dutcher*, 26 Minn. 391, 403, (4 N. W. Rep. 685.) Therefore the finding of the court as to the amount of the plaintiff's secured obligation has no other effect than a finding that some amount, secured by the mortgage, remains unpaid. The order for judgment—that the action be dismissed—was the proper determination upon the facts found. That result, and no other, would have followed a finding as to the only fact in issue, merely that the obligation secured by the mortgage remained to some extent unsatisfied. In view of this, some of the assignments of error need not be considered. It is only necessary to consider whether any evidence erroneously received or rejected can have so far affected the result that, if it had been ruled otherwise, the conclusion of the referee might have been that the obligation of the plaintiff had been wholly discharged.

Exhibit 1, received in evidence, was a statement of account between the parties on the 29th of January, including a part of the

account in question in this case, to which is appended the plaintiff's written admission of its correctness. This admission was relevant to this issue, so far as concerned that part of the account, and therefore it was not error to receive it. The defendant's cash-books were received in evidence, after testimony had been given such as the statute prescribes as the basis for receiving account-books as evidence. It is objected that these books were not books of "original entries" of "charges for moneys paid." The books were in the ordinary form of cash-books. Woolsey's name was entered in connection with each item of payment claimed to have been made on his account, although the same were not otherwise in terms charged to him; nor did it appear from these books that the payments there entered had been made on account of the Kiefer, Macklett, and Herbst contract. The objections were properly overruled. The entries were made at the time of the transactions evidenced by them. They were original entries. The statute upon the subject relates to "books of account kept for that purpose," and containing "the original entries of charges for moneys paid," etc., but it does not prescribe the form in which they shall be kept, nor the degree of definiteness to be observed in making entries. The statute, recognizing the universal and necessary custom of preserving in permanent form a memorial of business transactions which could not ordinarily be retained in the mind, has been so framed as to have a very general application. The account-book of an illiterate laborer, as well as those of the tradesman or banker, are admissible in evidence if within the statutory conditions, the purpose of which was to secure authenticity and credibility in respect to the evidence, rather than to prescribe the form of it. Whatever be its form, it is only evidence *prima facie* of what is shown by it. Suppletory proof may often be required to make such evidence relevant to a particular case. The fact that the entries of payments in these books were not in the form of charges against Woolsey, showing upon their face that he was debited with such sums, did not render the books inadmissible.

It was error to have received the journals in evidence, for the reason that the charges offered from these books were not, as required by statute, "original entries, * * * made at the time of the

transactions therein entered." They were made by transcribing the *data* from the stubs of checks retained in the check-books after the checks had been detached, and were written up several days after the giving of the checks. The checks themselves were in the defendants' possession when this evidence was offered. The distinction is obvious between the case thus presented and one where entries have been made daily, and in the usual course of business, from loose memoranda made upon slips of paper, or upon slates kept for temporary purposes only. The objectionable character of entries thus made is illustrated in this case by the fact that when the journals were made up, several days after the giving of the checks, the word "Woolsey" was entered in connection with each item, while upon the checks there was nothing to indicate that they were given on his account. But this error did not involve consequences which should affect the result. The journal entries represented checks given by defendants. They presented those checks in evidence, authenticated by proper proof, except as to one item of $300, for which no check was exhibited, and by the testimony showed that these charges were for material, labor, and accounts for the construction of the Kiefer building, and that Woolsey had acquiesced in their correctness. Woolsey, subsequently testifying with reference to the account, did not dispute the fact thus stated, except as to certain items, amounting to $500, represented by checks given directly to himself. His claim as to this was only that it was given for other purposes, and should not be treated as an item in the account for which the mortgage security was given. But the journal erroneously in evidence did not bear as evidence upon the question as to whether these entries were chargeable to the construction contract in controversy or not, for confessedly there were other accounts between the parties. Hence it is apparent that this evidence—the journals—cannot have affected the result as to the matter in controversy.

The offer to show by the testimony of the plaintiff that the amount of certain kinds of lumber charged in the defendants' lien account exceeded by $200 in value the amount "required" for the building, according to the plans and drawings, was properly excluded. The evidence offered did not go to show that the whole amount charged

was not actually purchased and used for the construction.   If it was wastefully used by the plaintiff, that would not affect the defendants' lien.   We discover nothing in the case justifying the reversal of the conclusion of the referee, that the obligations secured by the mortgage have not been fully satisfied.   We will add—although this is not necessary to our decision—that we do not consider that the evidence showing the circumstances connected with the giving of the mortgage would have justified the conclusion that the agreement as to the amount for which the security should be given ($3,000) would have concluded the parties as to the sum actually expended by the defendants, after as well as before the giving of the security, and for which expenditures the security was given.

Order affirmed.