## HARMON *v*. DECKER.

[68 Pac. 11, 1111.]

BOOK OF ACCOUNT AS EVIDENCE—ENTRIES NOT ORIGINAL.

1. Successive entries in a pass book, the first purporting to be two years before the second, with a year intervening between each of the others, are not admissible in evidence as original entries; it appearing by a bill of particulars attached to the complaint that many other items intervened, thus showing that the entries were only summaries copied from the ledger.

PROPRIETY OF RECEIVING CORROBORATIVE EVIDENCE.

2. Where evidence is rejected other supplementary evidence offered only in corroboration is properly rejected also.

RANK OF DAYBOOKS AS EVIDENCE.

3. Daybooks, being usually made hurriedly and not upon consideration of the interested parties, are not as conclusive evidence as contracts or other papers of that class. As an application of this, an entry in the daybook of a deceased merchant, designating a certain charge as a note, may be shown to have actually been for merchandise.

BOOKS OF ACCOUNT AS EVIDENCE OF LOANS OF MONEY.

4. The history and development of the law relating to the proving by books of account of loans of money by merchants to customers is reviewed and discussed in this case.

ENTRIES IN BOOKS AS EVIDENCE OF LOANS TO OTHERS.

5. Charges in a merchant's accounts to defendant, to cash advanced to, and checks in favor of, other persons, should be excluded, the entries not showing that they are for moneys loaned defendant or furnished others on his orders.

SECONDARY EVIDENCE—EFFORT TO FIND LOST PAPER.

6. No exact rule can be stated for determining the amount of diligence that must be expended in searching for a lost writing before secondary evidence of its contents can be received in evidence, as provided for by Hill's Ann. Laws, § 691, but the party alleging the loss must show that he has in good faith exhausted in a reasonable degree all sources of information and means of discovery which the nature of the case would sug-

gest and which are accessible; for example, secondary evidence of the contents of a writing should not be received where the person who last had the original states that he last saw it about a year before in the files of a certain case in the court house, and adds, "I have searched all the files and records,—all the papers that I have in my office; in fact, I have made a pretty clean search for it. I haven't it in my possession at all," for this amounts only to a statement that he had searched in his own office, and presumably the paper was still in the files where he last saw it.

EFFECT ON A DEBT OF ADMITTING THE INTEREST THEREON.

7. The recognition on his business books by a debtor for a series of years of an annual interest charged in favor of a certain creditor, coinciding with the charges in the books of the creditor, is not an admission of liability for the principal on which the interest was calculated.

From Josephine: HIERO K. HANNA, Judge.

This is an action by C. E. Harmon, as administrator of the estate of Horace Gasquet, deceased, to recover the sum of $2,908.80, alleged to be due on an open account for goods, wares, merchandise, and other property sold and delivered by the deceased to Charles Decker, the defendant, a copy of which is made a part of the complaint. It is averred that an item of said account dated December 31, 1889, and designated therein as a "note," for the sum of $5,448.51, was for merchandise and buildings purchased by defendant from Gasquet, which, by their mutual consent, was merged in said account; that plaintiff is informed and believes, and therefore alleges, that no note was ever executed therefor, but that interest on said account was charged from time to time by agreement of Gasquet and the defendant. The answer having put in issue the material allegations of the complaint, a trial was had resulting in a judgment for plaintiff in the sum of $382.14, from which he appeals.

AFFIRMED.

For appellant there were briefs over the names of *Robert Glenn Smith* and *H. D. Norton,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the name of *A. C. Hough* (*Austin S. Hammond* of counsel), with oral arguments by *Mr. Hough* and *Mr. Hammond.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. The account began December 31, 1889, when the defendant was credited with sundry items, and charged among others, as follows:

"To amount of note............................$5,448.51
To int. on same for 14 mo. at 6% per annum........   381.39
To cash advanced Karewski......................   300.00
To cash advanced Nunan.........................   200.00
To bal. due from 1889..........................  4,803.50"

This remainder is carried over to 1890, and the defendant is charged, among other items, with the two following:

"Int. bal. on note...............................$   288.21"

leaving due from him, after deducting sundry credits appearing at length in the ledger, a remainder of $4,564.62. Each year thereafter the defendant was charged with a remainder, and with the interest thereon until March 1, 1896, when, having been credited with all payments made, there was due from him, as appears from the bill of particulars, the sum of $2,908.80, which is sought to be recovered in this action. He was also charged, among other items, with the following:

"Jan. 22, 1892.   To check favor of Falkenstein.....$   143.30"
"Mch. 23, 1893.   To check favor Levi Strauss & Co...$   154.22"

At the trial his counsel admitted the correctness of said account, except the items thereof hereinbefore enumerated, which they contend could not be established by a book account. The defendant, having been called as plaintiff's witness, identified his own ledger, which, being introduced in evidence, shows that his account with Gasquet purports to commence December 12, 1893, from which time the items thereof coincide with the latter's account, except that Decker does not charge himself with the principal, but only with the interest thereon. Fred Frantz, a resident of Crescent City, Cal., one of the executors in that state of the last will of Horace Gasquet, deceased, testified, as plaintiff's witness, that he found in the latter's effects a pass

book, which being identified by the witness, the following entry therein was offered in evidence, to wit:

'88                    "Charles Decker Ac't.
10—6    1375.00)
         4073.51) ................................. 5448.51
Jan. 1st, '90, 14 months interest ................... 381.39
                                                    _____
                                                    5829.90
Charged on ac't on deductions on his bill ........... 1026.40
                                                    _____
Balance due by Ch. Decker, Jan. 1, '90 ............... 4803.50
    Paid in by Ch. D., Jan. 1, '91 .............. 1014.28
    Bal. due Jan. 1, '92 ..................... 3789.22
                                              _____
                                              4803.50
Jan. 1, '92, Bal. due by Ch. D ..................... 3789.22
    Condition 6% per annum.
    Security, all the buildings which were deeded to my name."

To explain this entry, plaintiff's counsel offered in evidence the following memorandum:

"Waldo, Josephine Co., Oregon.
                                October 6, 1888.
"Received from H. Gasquet two drafts, No. 138 vs. Porter, Sleisinger & Co. for W. J. Wimer, sum ($1375.00) thirteen hundred and seventy five dollars.

"Also No. 139 vs. Porter, Sleisinger & Co. for G. W. Wimer, sum ($4073.51) four thousand and seventy three and 51-100 in payment of goods and buildings in Town of Waldo.
                        Rece'd. Oct. 6th, 1888.
                                        Geo. W. Wimer.

To supplement the entry in the pass book, plaintiff offered in evidence a deed purporting to have been executed October 9, 1888, by Geo. W. and W. J. Wimer and their wives to Horace Gasquet, in consideration of $30,000, and conveying certain lots, stores, dwellings, barns, and other buildings; and they also offered Gasquet's ledger, containing the charge against the defendant of $5,448.51. The defendant's counsel having objected to the introduction of the deed, on the ground that neither of the subscribing witnesses thereto had been called, or their hand-

writing, or that of the grantors, proved, so as to establish the execution thereof, and to the ledger and other memorandum and receipt, on the ground that they were incompetent, irrelevant, immaterial, plaintiff's counsel stated to the court, in effect, that the pass book was offered to explain the original transaction, and the ledger to show that the sum in question had been carried into the current account; that they expected to show by Decker's books, which they would offer in evidence, that he had given Gasquet credit for interest on that sum; and that these matters, considered in connection with others, would show that there had been a consummated negotiation between the parties in respect thereto; but the court rejected the evidence offered, and allowed the plaintiff an exception.

It will be observed that the sum of the drafts specified in the receipts corresponds with the charge made on the pass book and in the ledger, and the dates also coincide. An inspection of the pass book shows that of the four debits the first was apparently made therein October 6, 1888, and the other three on the 1st day of January, 1890, 1891, and 1892. It is quite evident that these entries are not original, for when the charges therein noted are compared with the bill of particulars attached to the complaint it is found that many other items intervene, thus showing that they were not made in the usual course of the business, but are only the summaries copied from Gasquet's ledger, relating to his account with the defendant. The entry in the pass book, though made by a person deceased, was evidently not made at or near the time of the transaction, nor was it against the interest of the person making it, and hence it was not admissible as primary evidence of the fact as stated: Hill's Ann. Laws, § 767.

2. The deed, like the receipt, was offered only to corroborate the entry in the pass book, in which case it is doubtful whether the strict formality required by the statute (Hill's Ann. Laws, § 761) should be observed, as when an instrument of that character is designed to prove title or to subserve a higher purpose; but, however that may be, the pass book which was the foundation for the introduction of the receipt, deed, and ledger in evidence

having failed, the latter must also fall with it, unless the evidence proposed to be offered by plaintiff's counsel of what they expected to prove connected the pass book, receipt, deed, and ledger with the transaction, so as to charge the defendant with the sums stated as the foundation of the account. The answer denies, upon information and belief, that the sum of $5,448.51 was intended to be charged for merchandise and buildings received from Gasquet. No testimony appears in the bill of exceptions tending to show that either of the lots or buildings so purchased by Gasquet was conveyed to the defendant, or that any agreement was ever entered into between them whereby the latter was to purchase or pay for any of the property described in Wimer's deed. "The other matters," alluded to by plaintiff's counsel in their statement of what they expected to prove, and which were to be considered in connection with the pass book, receipt, deed, and ledger, are, in our opinion, not sufficiently definite to render the offer available, and hence no error was committed in rejecting the memorandum and other documents offered in support thereof.

3. The witness Frantz having identified the day books containing Gasquet's original entries as made by his bookkeeper, and the ledger to which the defendant's account was transferred, the same were admitted in evidence as corroborative of the bill of particulars attached to the complaint, except that all entries relating to the note and interest thereon, the balance of the accounts as yearly ascertained, and the interest thereon, the cash advanced to Karewski and Nunan, and the checks issued in favor of Falkenstein and Levi Strauss & Co., were excluded, and plaintiff's counsel excepted to the court's action in these respects, and contended that errors were thereby committed. If Gasquet's day book contained any entry in relation to the origin of or consideration for the charge made against the defendant for the sum of $5,448.51, the bill of exceptions fails to disclose it. As we understand the transcript, this sum was charged against Decker in the Gasquet ledger as a "note," and also in his pass book, as hereinbefore stated. The day books offered in evidence have not been sent up, and, so far as apparent

from the bill of exceptions, no mention whatever is made in the books of original entry of this sum. It is alleged in the complaint that the debt was incurred by the defendant's purchase of goods, merchandise, and property from Gasquet, and that no note had ever been executed as evidence thereof. We think the plaintiff had the right to contradict the entry made by Gasquet in his books, and to show, by competent evidence, that what was there designated a "note" should have been a statement of certain goods, wares, merchandise, and property sold and delivered, and the value thereof, which was provable by the books of original entry, and that nothing said by this court in *Strong* v. *Kamm,* 13 Or. 172 (9 Pac. 331), militates against this principle. The entry in a daybook made in the hurry and press of business does not rise to the character or dignity of a contract, or evidence the *aggregatio mentium* of the parties, so as to require the interposition of a court of equity to correct a mistake that may have occurred through the carelessness or ignorance of the bookkeeper; and hence, upon principle, the entries made in such books ought to be corrected, if necessary, to make them comport with the facts which should have been recorded in the first instance. The plaintiff having alleged the facts relied upon, and they being denied, the burden of establishing them rested upon him. No memorandum in any book of original entries was introduced to substantiate the important fact referred to, nor was any testimony introduced, so far as discoverable from an inspection of the bill of exceptions, tending to show why the defendant should have been charged with $5,448.51, or any other sum, and hence no error was committed in excluding that sum from the account.

4. As to the other item excluded by the court, some contrariety of judicial utterance exists in respect to the right of establishing the loan of money in large sums by the production of the books of original entry, unless the person so making the loan is a banker or broker. The transcript does not purport to contain all the testimony given at the trial, so that it is difficult to state, with any degree of certainty, the business in which Gasquet was engaged, but we think it fairly inferable from the

41 OR.—38.

bill of exceptions that he was a merchant, and conducted general stores at Crescent City, Happy Camp, and Gasquets. It was the rule of the common law that entries made in the regular course of business by a clerk in the shop books were admissible in evidence after the death of such clerk, on proof of his handwriting: *Welsh* v. *Barrett,* 15 Mass. 380; *Walker* v. *Curtis,* 116 Mass. 98. This rule was first extended in the United States to cases in which the person making the entry is still living, and verifies the memoranda, though he may not remember the facts so entered; but such entries are not admissible in the lifetime of the clerk, unless they would be admissible after his death, upon proof of his handwriting: *Spann v. Baltzell,* 1 Fla. 301 (46 Am. Dec. 346). The rule was further expanded in this country so as to admit in evidence entries made by the parties themselves, as well as those made by their clerks, to prove the price of goods, the sale or delivery thereof, or the performance of work or labor: *Union Bank* v. *Knapp,* 3 Pick. 96 (15 Am. Dec. 181); *Merrill* v. *Ithaca & O. R. Co.,* 16 Wend. 586 (30 Am. Dec. 130). In *Bracken* v. *Dillon,* 64 Ga. 243 (37 Am. Rep. 70), it was held that, before the books of a merchant or other trandesman can be used to prove an account, it must appear that he has no higher evidence of its truth, and therefore that he had no clerk who sold the goods, or that clerk, if he had one, is dead, beyond the jurisdiction, or otherwise inaccessible; if he had no clerk who sold the goods, or the clerk is inaccessible, then, before he can introduce the books, the bookkeeper, if accessible, must be produced to prove that it is the book of original entries; if he had none, or he is inaccessible, then he may prove that it is the book of original entries himself; books are secondary evidence, and only admissible *ex necessitate rei;* that the books will not establish considerable items for cash, nor accounts of third persons transferred to defendants, nor are they admissible at all to show the authority to make such transfer. They may be admitted to show that a transfer was made pursuant to previous authority.

While books of original entry are admissible to prove the price, sale, and delivery of articles, and the performance of labor or

the rendition of service, because such entries are made in the usual course of business, such books are generally inadmissible to prove the loan of large sums of money, because transactions of this character are usually evidenced by promissory notes, checks, and bills of exchange. Thus, in *Veilhs* v. *Hagge,* 8 Iowa, 163, the defendant, by way of set-off to the plaintiff's action, pleaded an account which contained, among others, several items charged against the plaintiff as "cash $100," and "cash $146." After having produced the necessary preliminary evidence in verification of his books of account, and after having proved by one Jensen, who was defendant's clerk from March, 1855, to March, 1856, that plaintiff during that time was a customer of the defendant, and in the habit of borrowing sums of money of him from time to time, which were charged in said books of account, without offering any other evidence in support of said cash items, the defendant offered to prove the same by said books. The court charged the jury that "cash, except in small items, to the amount of ten dollars or thereabouts, which appear to have been furnished in the ordinary course of dealing between the parties, is not the subject of the book account, and cannot be proved by the books alone. But, to entitle the defendant to recover for such items, there must be other evidence than what the books furnish. If there is evidence, other than the books, that the money was loaned to the plaintiff, items of such character the jury will allow." Mr. Justice STOCKTON, in speaking for the court in deciding the case, after reviewing many decisions from other states supporting this principle, says: "We think the general rule is clearly established by these authorities that a charge for 'money paid' or 'money lent' cannot be proved by the party's book of accounts; that such transactions are not usually the subject of a charge in account; and that charges of that nature are not such as are made in the ordinary course of business by one party against another." To the same effect, see *Lyman* v. *Bechtel,* 55 Iowa, 437 (7 N. W. 673); *Culver* v. *Marks,* 122 Ind. 554 (23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. Rep. 377); *Lehmann* v. *Rothbarth,* 111 Ill. 185; *Kelton* v. *Hill,* 58 Me. 114; *Winner* v. *Bauman,* 28 Wis. 563.

5. While the loan of large sums of money is usually evidenced in the manner indicated, and the payment thereof by receipts, these items may be proved by the books of a banker or broker, when such is in pursuance of his ordinary business method: *Union School Furn. Co.* v. *Mason,* 3 S. D. 147 (52 N. W. 671). What shall be considered as a large sum of money, the loan of which cannot be established by the mere production of books of account, will probably ever remain problematical. The growth of commercial enterprise must necessarily expand the methods of transacting the business pertaining thereto, including the mode of evidencing such facts, and as courts are not called upon to make, but to enforce, the rules adopted by experience, it would seem to follow that what, a few years ago, would have been regarded as a large sum of money, must now be considered as a mere bagatelle, so that the standards as formerly fixed cannot longer remain as guides of procedure. Admitting that Gasquet was not a banker, and conceding that he was only a general merchant, we are not prepared, nor is it necessary, to say that the sum of $300 advanced to Karewski, and the smaller sums involved in this appeal, were "large sums," within the meaning of the rule discussed by the authorities, to which attention is called. We rest our decision upon the principle that the items adverted to, and excluded by the court, do not appear from an inspection of the original entries to have been money loaned to the defendant or furnished to others upon his orders. The production of the books of account did not, therefore, establish a charge against the defendant in respect to such items, and before the fact could be established testimony should have been introduced explaining the ambiguity, and imposing upon the defendant a liability therefor. The plaintiff having failed in this respect, no error was committed in excluding the items above referred to. If Gasquet took a note to evidence the sale of the goods, wares, merchandise, and property alleged to have been purchased by the defendant, as would appear from an inspection of the defendant's account of 1890 and 1891, the production of the instrument or the proof of its loss would establish its execution, and hence the note could not be the subject

of a book account without rendering the defendant also liable on the instrument, if it should be found in the hands of a person to whom it had been assigned for value before maturity.

Other errors are assigned, but, not considering them important, the judgment is affirmed.                    AFFIRMED.

### Decided 26 May, 1902.

### ON PETITION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion.

6. Plaintiff's counsel, having filed a petition for a rehearing, contend therein that the trial court rejected material testimony to their prejudice, which action it is said this court failed to consider, although duly assigned as error. At the trial, in order to show that defendant was indebted to Gasquet's estate in the sum sought to be recovered, they attempted to prove the contents of a lost instrument by Fred Frantz, who testified that, as one of the executors of the last will of Horace Gasquet, deceased, he found among his papers a statement of account which he thought was in Decker's handwriting; that this document was lost or mislaid; that he supposed it had been sent to plaintiff at Grants Pass, Oregon; that he had searched among all the effects in his possession at Gasquet and Crescent City, California, and was unable to find the missing paper. Referring to the statement and to persons residing at Grants Pass, where the trial was held, he was asked to state what inquiries he made there, and of whom, to which he replied: "Made inquiries of Mr. Harmon, and searched everywhere at home, and can't find it." Plaintiff, appearing as a witness in his own behalf, testified that, as administrator of Gasquet's estate in Oregon, he received from Frantz what purported to be a statement of account between Decker and Gasquet, dated about December 31, 1895, and that about a year prior to the trial it disappeared from the files of the estate at the court house in Josephine County, and he did not know what had become of it. In answer to the question, "What search have you made for it since that time?" the witness said: "I have

searched all the files and records,—all the papers that I have in my office; in fact I have made a pretty clean search for it. I haven't it in my possession at all. Q. Have you searched in all places where it could be, to your knowledge? A. I have." The witnesses Frantz and Harmon having been requested to state in detail the contents of the statement of account, the court refused to hear such testimony, and exceptions were reserved, whereupon plaintiff's counsel stated to the court that they expected the answers of the witnesses to show that they had seen the lost statement; that it was in Decker's handwriting, dated about December 31, 1895; and that it showed a balance of $2,908.80 due from him to Gasquet.

The question to be considered is whether the court erred in not receiving the testimony so offered. To avoid the presumption that higher evidence would be adverse from inferior being produced (Hill's Ann. Laws, § 776, subd. 6), a party is expected to furnish the best evidence obtainable. When primary evidence of a material fact cannot by a reasonable effort be secured, secondary evidence of the contents thereof is often admissible. Thus, the rule that there shall be no evidence of the contents of a writing other than the writing itself is subject, among others, to the following exception: "When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default": Hill's Ann. Laws, § 691. No precise rule can be prescribed as to what shall be considered a reasonable effort, but the party alleging the loss or destruction of a document must show that he has in good faith exhausted in a reasonable degree all sources of information and means of discovery which the nature of the case would suggest, and which are accessible to him: *Wiseman* v. *Northern Pac. R. Co.,* 20 Or. 425 (26 Pac. 272, 23 Am. St. Rep. 135). It will be remembered that Harmon testified that the statement of account was last seen in the court house at Grants Pass, about a year prior to the trial, which was held November 20, 1899. His testimony fails to show, however, that he made any examination of the papers on file at the court house in said county, unless such fact is to be

inferred from his affirmative answer to the question: "Have you searched in all places where it could be, to your knowledge?" The answer to this interrogatory must be held insufficient, for otherwise the witness, and not the court, would be the judge of the places to be examined for the discovery of lost documents. Harmon says he "searched all the files and records," which, at a casual glance, might seem to imply that he had made an examination of the papers on file at the court house in said county in the matter of the estate of Horace Gasquet, deceased; but by limiting the investigation to "all papers that I have in my office" he necessarily excludes an examination of the papers at the court house where the statement of account was filed. The document having been filed in the proper office, search should have been made in such office to rebut the presumption that it remains there: Hill's Ann. Laws, § 776, subd. 33; Jones, Ev. § 213. No direct testimony having been offered to the effect that the court house had been searched for the discovery of the missing paper, the plaintiff failed to make the showing required, in order to let in secondary evidence of the contents of the statement of account, and no error was committed in its exclusion.

7. Plaintiff offered in evidence Decker's books, which disclosed that his account coincided with Gasquet's in respect to the annual interest purporting to be due from him. The court, referring to such entries in charging the jury, said: "These items, standing alone, would not be sufficient to warrant you in saying Mr. Decker thereby admitted the amount claimed on the part of the plaintiff. If the plaintiff had offered evidence, and it had been admitted by the court, showing that Mr. Decker had actually owed Mr. Gasquet the amount claimed in the complaint, and that Gasquet was entitled to charge interest on the same, then the credits on Mr. Decker's books might be considered as a circumstance tending to support the plaintiff's claim; but in the absence of other evidence, the entries in Decker's books would not warrant you in saying that the items claimed on the part of the plaintiff were thereby admitted by Mr. Decker." It is contended that the court erred in giving this instruction. To render it intelligible it is deemed necessary to state that Gasquet's

books show that his account purports to have begun December 31, 1889, with the following charge:

"To amt. of note...............................$5,448.51
To interest on same, 14 mo. @ 6% per annum...... 381.39"

leaving, as apparently due him, after deducting certain payments made by Decker, a remainder of $4,564.62, the interest upon which, for the year ending December 31, 1890, is $288.21. The account is balanced each year, and the new principal forms a base upon which interest is charged, as follows: 1891, $373.87; 1892, $227.35; 1893, $195.06; 1894, $182.13; 1895, $157.36,— leaving due March 1, 1896, as disclosed by Gasquet's account, $2,908.08, but according to the defendant's books only $382.14, for which judgment was given. The instruction complained of presents the question whether Decker's entry in his books of the annual interest, which coincided with Gasquet's account thereof, affords a conclusive recognition of the debt and a promise to pay the sum upon which such interest is calculated. The fact that in consequence of certain payments made by him the annual interest charge was constantly diminishing is a circumstance tending to show that he promised to pay the principal originally charged to him, and hence rendering him liable for the sum found to be due March 1, 1896, as disclosed by Gasquet's books. While such circumstance raises an inference in favor of plaintiff's theory of the case, we do not think it irresistibly follows that because Decker recognized the interest by annually entering in his books a memorandum thereof he thereby in the absence of any testimony upon the subject, conclusively evidenced a promise to pay the principal upon which such interest is calculated. Interest is ordinarily an incident of and follows the principal upon which it is based, the latter being the substance and the former its shadow; but because the interest is an incident of the principal it does not irresistibly lead to the conclusion that the principal follows the interest. It would appear from Gasquet's books that the debt with which Decker was charged was originally incurred on account of certain buildings conveyed by George W. and W. J. Wimer to Gasquet. No evi-

dence was introduced tending to show that these buildings ever became the property of Decker, or that he agreed to purchase them, or that any consideration ever existed for the debt so charged to him. If Decker had agreed to purchase the property, the fact could undoubtedly have been established without resorting to such an indirect method of inferring the existence of the debt as by a mere credit upon his books of an annual interest thereon; for it may be that such interest was the rent agreed to be paid for the use of the buildings. We think the court's charge was warranted by the evidence, and no error was committed in giving it. It follows that the petition for rehearing is denied.                          REHEARING DENIED.

Decided 30 June, 1902.