## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### BUCHANAN, ADMINISTRATOR V. HIGGINBOTHAM.

#### November 14, 1918.

1. ACCOUNT STATED—*Transactions Between Others than Merchants.* —While the doctrine as to accounts stated may originally have had its origin in transactions between merchants, it has quite generally been extended to all cases where the relation of debtor and creditor exists.

2. ACCOUNT STATED—*Account Between Others than Merchants.*— Between merchants, the failure to dispute an account rendered, after a lapse of a reasonable time, amounts to an admission of its correctness, and even though an account rendered between others than merchants may not become technically an account stated, a retention without objection, of the account by the party to whom rendered, may be taken to show an implied admission or acquiescence in its correctness, the weight of the testimony being for the consideration of the jury, under the circumstances of the particular case.

3. ACCOUNT STATED — *Objections — Time of Making — Burden of Proof.*—Objections to accounts rendered, which will prevent them from being deemed stated accounts, must be made within a reasonable time; and the burden of proving that objection was made within a reasonable time rests upon the party contesting the account so rendered; the rule is founded on the acquiescence of the party charged.

4. DOCUMENTARY EVIDENCE—*Books as Evidence—Admissibility.*— Entries in books, in order to be admissible, ordinarily must have been made in the regular course of business and as a part of the party's system of keeping his accounts. The fact that the entries are made by clerks in the regular routine of their employment, and under the natural impulse of an employee to perform his duties accurately, is the safeguard of the accuracy of the entry. Indeed, under the systems of book-keeping in modern business houses, the mechanical precision with which numerous employees record various transactions, together with the absence of any personal motive to misrepresent the facts of the transaction, makes the modern book of accounts a very high form of evidence in respect of transactions that are the proper subject matter for a book of account.

5. DOCUMENTARY EVIDENCE—*Books as Evidence—Cash Payments.*—Books of account of banks and bankers are admissible to prove cash advances, loans and other cash items, and this rule has been frequently extended to others where the entries in respect to cash transactions are made in the regular course of business and not merely as casual transactions foreign to the general character of the business conducted by him. The loan or payment of small sums may be proved by books, upon the ground that they are not within the reason of the general rule, that large cash transactions, out of the ordinary course of business cannot be thus proved.

6. DOCUMENTARY EVIDENCE—*Books as Evidence—Cash Payments—Case at Bar.*—In the instant case, the relatively small payments of cash in question, some of them being apparently in settlement of accruing rent, in accordance with the previous custom of the parties, come within the exception to the general rule that cash payments cannot be proved by book accounts.

7. GIFTS—*Presumption—Members of a Family.*—Although in the absence of evidence to the contrary, services and payments made by members of the same family and household to each other are presumed to be gifts, charges regularly made by a step-son, a merchant, against his step-mother and accounts rendered therefor negatives the suggestion that these payments were intended as gifts, and show clearly that they were not so intended.

8. EXECUTORS AND ADMINISTRATORS—*Proof of Indebtedness to Estate—Duty of Executor.*—Where a cause was referred to a commissioner, who took the evidence submitted and reported in favor of the complainant, it was the duty of the defendant, the personal representative of a decedent, if he knew of any evidence to sustain his allegations of indebtedness by complainant to the decedent, or to discredit the account of the complainant, to produce it before the commissioner for consideration, or at least to give the names of the witnesses to the commissioner, so that they might be summoned. Only one inference can be drawn from his failure to do so, and that inference is that no such evidence exists. The criticism that the commissioner did not seek such testimony is not justified.

Appeal from a decree of the Corporation Court of city of Staunton. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. M. Perry* and *H. J. Taylor,* for the appellant.

*Timberlake & Nelson, Charles Curry* and *L. Travis White,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

The complainant in the trial court, A. T. Higginbotham, instituted his suit against the appellant as the personal representative of Laura T. Higginbotham, deceased, alleging that she was at the time of her death indebted to him in the sum of $1,496.56, and filed an itemized account as an exhibit with his bill. This account, running from September, 1907, to September, 1911, contained charges in every month during that period except one. The defendant denied the allegations of the bill and called for strict proof of such indebtedness, and alleged upon information and belief that the complainant was largely indebted to the decedent on several accounts. It is unnecessary to refer further to any of these allegations of indebtedness to the decedent, except to the claims that the complainant boarded with the decedent for some years and had never paid anything therefor, that for years he occupied the decedent's stable, and that his wife also boarded with decedent for almost a year, because there was no evidence offered or suggested to support any other of such claims.

The cause was referred to a commissioner, who took the evidence submitted and reported in favor of the complainant. The report was excepted to by the defendant, but the exceptions were overruled, and there was a decree in favor of the complainant, which is under review.

As to the allegation that the complainant was indebted to the decedent for board and for rent of the stable, it

appears from the evidence she was the step-mother of the complainant, and that after his father's death he continued to live with her, and that there was a distinct understanding between them that no such board or rent should be charged because he furnished from his produce store and from other sources, fruits, vegetables and other family supplies fully equal to if not greater in amount than the value of such board and rent. The relations between them were affectionate and cordial.

The complainant occupied as his place of business a store owned by the decedent, for which it appears that he credited her with rent at the rate of $300 a year, and he charged her with taxes, and insurance premiums on her property, repairs and improvements to her dwelling, paid by him, with coal furnished, cash paid her, and other small items, very much the larger number of which are for chicken feed, bought by the complainant from another merchant, and the balance claimed by him thus arises.

The defendant challenged the admissibility and sufficiency of the evidence to support the decree. This evidence consisted of the account, and the books in which the account appears, which were tendered as evidence, supported by the testimony of the bookkeeper who made the entries therein from and after January, 1910, until the death of the decedent in September, 1911. It appears that the balance apparently due by the decedent at the time this bookkeeper commenced keeping the account was $35.30, and the bookkeeper testified that all of the entries therein from and after that date were made regularly as a part of her duties as bookkeeper, at or near the time of the transactions, and by direction of the complainant; that at the end of the year 1910, after crediting the rent for the year 1910, there was a balance due of $1,235.30, and that the account showing this fact was rendered to the decedent. After that date and until the death of the de-

84

cedent, in September, 1911, the total of debits charged which are here questioned amounts to $303.54, while the rent which accrued in the same period and was credited on the account amounts to $208.34, and there is another credit of $43.44.

The question, then, is whether, in the absence of any testimony whatever discrediting the complainant's claim, his books, regularly kept in connection with his mercantile business, the evidence of the bookkeeper who kept them, and the account rendered, are sufficient to sustain the decree.

It is impossible to reconcile all of the cases as to the effect of the failure to question an account rendered. There is a comprehensive note to the case of *Smith* v. *Smith,* 163 N. Y. 168, 57 N. E. 300; in 52 L. R. A., at p. 545, and a thorough discussion of the question in the note to *Sheridan Coal Co.* v. *C. W. Hull Co.,* 87 Neb. 117, 127 N. W. 218, in 138 Am. St. Rep., at p. 441.

There are certain propositions, however, which are well established, which are decisive of this controversy.

In 1 *Corpus Juris* 679, it is said that "While the doctrine as to accounts stated may originally have had its origin in transactions between merchants, it has quite generally been extended to all cases where the relation of debtor and creditor exists."

Mr. Wigmore says, with clearness and confidence: "In one situation, however, there has been a uniform rule, namely, that the failure to dispute an account rendered, after a lapse of a reasonable time, amounts to an admission of its correctness." 2 Wigmore on Ev., 1265, section 1073; *Fayette Liquor Co.* v. *Jones,* 75 W. Va. 119, 83 S. E. 728; Note 29 L. R. A. (N. S.) 348.

Some courts have limited the rule, that an account may become stated by silence from which acquiescence may be inferred, to accounts between merchants only; but even

though an account rendered between others than merchants may not become technically an account stated, we think that it is nowhere doubted that the evidence of such retention without objection, between parties other than merchants, may be taken to show an implied admission or acquiescence in its correctness, the weight of the testimony being for the consideration of the jury, under the circumstances of the particular case. 1 *Corpus Juris* 696.

In Virginia, it has been settled since the case of *Townes* v. *Birchett,* 12 Leigh (39 Va.) 173, that the doctrine is not restricted to merchants, and it is there held that the rule is not confined to accounts rendered by merchant to merchant of mutual dealings between them as merchants, much less between merchants abroad and merchants at home; that objections to such accounts rendered, which will prevent them from being deemed stated accounts, must be made within a reasonable time; that the burden of proving that objection was made within a reasonable time rests upon the party contesting the account so rendered; and that the rule is founded on the acquiescence of the party charged.

In *Goldsmith* v. *Latz,* 96 Va. 680, 32 S. E. 483, it was held that where an account is rendered and is retained by the party to whom it is rendered, without objection, there arises a strong presumption of its correctness, and throws the burden of proving error therein upon the party who alleges such errors.

These authorities make it clear that there is a *prima facie* presumption of the correctness of so much of the account here involved, as was rendered January 1, 1911, which showed a balance of $1,235.30 due by the decedent to the complainant.

The correctness of the items charged in the nine months of 1911, immediately preceding the death of Mrs. Higginbotham (if certain general statements of the book-

keeper are insufficient), depends upon whether the book accounts and books of the complainant can be introduced as evidence.

This is stated of the "shop book" rule in 10 R. C. L., p. 1179: "Entries in books, in order to be admissible, ordinarily must have been made in the regular course of business and as a part of the party's system of keeping his accounts. The fact that the entries are made by clerks in the regular routine of their employment, and under the natural impulse of an employee to perform his duties accurately, is the safeguard of the accuracy of the entry. Indeed, under the systems of bookkeeping in modern business houses, the mechanical precision with which numerous employees record various transactions, together with the absence of any personal motive to misrepresent the facts of the transaction, makes the modern book of accounts a very high form of evidence in respect of transactions that are the proper subject matter for a book of account." Citing many authorities. Notes, 125 Am. St. Rep. 843; 138 Am. St. Rep. 451; 52 L. R. A. 689; 27 L. R. A. 822.

In this case it appears that these books purport to record nearly five years of mutual dealing between the decedent and the complainant; that the books were kept by the double entry method; that the bookkeeper could not have kept her books balanced or her cash and bank account correctly without making these entries; that the account against Mrs. Higginbotham was carried upon the books of the complainant as an asset; and that the largest item on the credit side was for rent of the store in which he was then doing business, which was owned by the decedent. It is claimed with some earnestness that because many of the items charged were not for merchandise of the kind in which the complainant regularly dealt, but were for certain merchandise which he bought from other

merchants, therefore the entries were not in the regular course of his business. We do not think that the "shop book" rule should be thus limited, or that a merchant's account with his landlord, however he may pay his rent, whether in goods, cash or otherwise, is not an account kept in the regular course of his business. In most of the States it has become the rule to admit entries in books, made in the ordinary course of business at or near the time to which they relate, when authenticated by the oath of the entrant or otherwise. 10 R. C. L., p. 1172.

It is further objected that the rule admitting book accounts does not admit them to prove cash payments, because such items can generally be otherwise proved. Whatever the limitations imposed by this rule, they have little application to this case, because the part of the account we are now considering, from January 1, 1911, to September, 1911, contains only one large cash item and that is the item of $634.50, which was paid by the complainant in satisfaction of a vendor's lien upon certain property of the decedent, which payment was otherwise fully and satisfactorily proved, and the correctness of this charge is acknowledged by the defendant, has been paid since the decree, and is therefore not here involved. It is settled, however, that books of account of banks and bankers are admissible to prove cash advances, loans and other cash items, and this rule has been frequently extended to others. where the entries in respect to cash transactions are made in the regular course of business and not merely as casual transactions foreign to the general character of the business conducted by him, as is shown by the note to *Lewis v. England,* 2 L. R. A. (N. S.) 401 (14Wyo. 128, 82 Pac. 869). The loan or payment of small sums may be proved by books, upon the ground that they are not within the reason of the general rule, that large cash transactions, out of the ordinary course of business cannot be thus.

proved. *Petit* v. *Teal,* 57 Ga. 145. Where, in the course of business, small sums are passing between the parties, they may with propriety be charged on book, and proved in the same manner as the other items of the account. *Cram* v. *Spear,* 8 Ohio 494; *Hough* v. *Henk,* 8 Ohio Cir. Ct. R. 354.

In *Harmon* v. *Decker,* 41 Ore. 587, 68 Pac. 11, 1111, 93 Am. St. Rep. 748, the rule as to what shall be considered a large sum of money the loan of which cannot be established by a mere production of books of account, was said to be impossible of determination by any fixed standard, and the court in that case said it was not prepared to say that $300 is "a large sum" in the meaning of the general rule. Mr. Justice Moore, recognizing the general rule that large cash loans may not be proved by the parties' account books, says this: "What shall be considered as a large sum of money, the loan of which cannot be established by the mere production of books of account, will probably ever remain problematical. The growth of commercial enterprise must necessarily expand the methods of transacting the business pertaining thereto, including the mode of evidencing such facts, and as courts are not called upon to make, but to enforce, the rules adopted by experience, it would seem to follow that what a few years ago would have been regarded as a large sum of money must now be considered as a mere bagatelle, so that the standard as formerly fixed cannot longer remain as guides of procedure. Admitting that Gasquet was not a banker, and conceding that he was only a general merchant, we are not prepared, nor is it necessary, to say that the sum of three hundred dollars advanced to Karewski, and the smaller sums involved in this appeal, were 'large sums' within the meaning of the rule discussed by the authorities, to which attention is called." Note 138 Am. St. Rep., p. 467; *LeFrance* v. *Hewitt,* 7 Cal. 186; *Beall* v. *Rust,* 68 Ga. 774; *Orcutt* v.

*Hanson,* 70 Iowa, 604, 31 N. W. 950; *Wilson* v. *Wilson,* 6 N. J. L. 99; *Tucker* v. *Bradley,* 33 Vt. 328; *Woolsey* v. *Bohn.* 41 Minn. 238, 42 N. W. 1022; 10 R. C. L. 1188; 17 Cyc. 382.

In *Cargill* v. *Atwood,* 18 R. I. 303, 27 Atl. 214, it is held that where the parties have been in the habit of treating cash items, both on the debit and credit side of the account between them, as the proper subject of a book charge, the proof of the loan or advancement of the money on the one side, or payment on account of the same on the other, may be made by the production of the books to the same extent as may proof of the delivery of another article; and whether there has been such a course of dealing between the parties is for the jury to determine.

The relatively small payments of cash involved in the portion of the account now being considered, some of them being apparently in settlement of the accruing rent, and in accordance with the previous custom of the parties, come within the exception to the general rule that cash payments may not be proved by book accounts.

It is also claimed that, in the absence of evidence to the contrary, services and payments made by members of the same family and household to each other are presumed to be gifts. It is sufficient to say as to this contention that the fact that charges were regularly made by the complainant against the decedent and accounts rendered therefor negatives the suggestion that these payments were intended as gifts, and shows clearly that they were not so intended.

There is also criticism or complaint that the commissioner did not seek testimony to sustain the defendant's allegations of indebtedness on the part of complaintant to his decedent. This criticism is not justified. It was the duty of appellant, if he knew of any evidence to sustain his allegations, or to discredit the account of the complainant, to produce it before the commissioner for consideration, or at least to give the names of the witnesses to the commis-

sioner, so that they might be summoned.. Only one inference can be drawn from his failure to do so, and that inference is that no such evidence exists.

The testimony adduced clearly indicates the names of the persons to whom these payments were made, as well as the dates of the several transactions. The bookkeeper testified in a general way that they were made by checks of the complainant to these persons who were either named or indicated, and it is impossible to escape the conclusion that they were so made, because, if not, the obvious means of contradiction were clearly indicated by the evidence. While the testimony is not as clear and as satisfactory as is usual and desirable in such cases, we have no doubt whatever of the correctness of the decree upon the record presented.

*Affirmed.*