## CIRCUIT COURT OF HENRICO COUNTY

James River Building Supply Co.

v.

Diversified Development Inc.

November 14, 1980

Case No. 79-L-195

By JUDGE E. BALLARD BAKER

James River Building Supply Company seeks a $60,526.19 judgment against Diversified Development, Inc. (DDI), this growing out of an open account in which James River supplied building materials to DDI over several years.

Evidence was heard on August 8, 1980, and argument on October 3 after the filing of memoranda.

The Motion for Judgment asked for $16,644.87 covering materials allegedly supplied and not paid and $43,381.32 for accrued unpaid service or finance charges. At the August trial, it appeared that there was a dispute over the amount of unpaid invoices, in addition to the dispute over whether service charges were proper. Counsel agreed that an effort would be made between the parties to resolve the dispute over the invoices and the Court would consider only the issue of service charges at this time.

These parties began doing business in 1972 after oral discussion. At the outset, service charges were

mentioned, but it does not appear that the parties were in agreement. Mr. Ferguson, President of James River, stated the James River policy of applying service charges on past due balances and Mr. Joyner, President of DDI, stated the DDI policy of not paying service charges. As their first discussion preceded any deliveries, service charges were only a contingent future possibility and whether such charges would be made or not made with respect to DDI was not resolved.

Over the years, DDI would make oral requests to James River for materials and would follow with a purchase order. The DDI purchase order would state the terms "As agreed." (Def. Ex. B). James River would fill the order. A delivery ticket (Def. Ex. D) and an invoice (Plt. Ex. 1 and Def. Ex. C) would be furnished by James River. Delivery tickets used by James River from October 1973 through September 1974 contained a statement that a finance charge of 1% per month was applied to all balances over 30 days old. Invoices used by James River from October 1973 through May 1974 contained the same statement about finance charges. Delivery tickets and invoices used after September and May 1974 respectively did not contain the finance charge statement.

All delivery tickets and all invoices from James River did state the terms as "Due Net 10th of Following Month."

The James River statements have at all times stated that a finance charge would be imposed on balances unpaid over 30 days and the rate, when applicable, would be 1%, later raised to $1\frac{1}{2}$%, per month. (Plt. Ex. 3, Def. Ex. E, F, F-1, and G). The increase to $1\frac{1}{2}$% was noted by a red stamp on statements beginning August 1974; the increase appears printed on statements on and after February 1976.

Joyner, for DDI, testified that he paid from the James River invoices, matching them up against the purchase orders, and the invoices after May 1974 made no reference to finance charges.

There is evidence that DDI paid some finance charges in 1975, the amounts totalling $364.89. Joyner says DDI never agreed to pay such charges and those payments were a mistake.

The total amount of business done between James River and DDI, over a period from September 1972 to December 20, 1978, was $1,278,837.42. DDI's computation of the James River claim indicates that of the amount claimed $9,202.71 is finance charges imposed on finance charges. Anything not paid, including finance charges, was put by James River in the unpaid balance on which the finance charge was based.

As indicated, when Ferguson and Joyner first met and discussed doing business, there was no agreement on finance charges. Ferguson testified that he would call Joyner from time to time about the account when it became past due, was aware of the finance charges involved, and would mention the finance charges. According to Ferguson, Joyner said he did not like such charges, but never said he would not pay. Joyner says finance charges were brought up by Ferguson several times but were never really discussed, and if they had been mentioned he would say he would not pay.

Joyner also said he refused to sign a credit application when asked by Ferguson because it required payment of service charges. Ferguson says Joyner gave no reason why he would not sign the application, but that the application did require a personal guarantee of the account.

Ferguson says Joyner gave no reason why he would not sign the application, but that the application did require a personal guarantee of the account.

Ferguson would look at the DDI balance and see the amount past due, which included finance charges. Joyner would look at the James River account as carried on his books and note the age of the unpaid invoices but he says that he had told his accountant not to include finance charges, so all he saw was the total of the unpaid invoices.

Things began to come to a head in the Fall of 1978. Prior to October 20, 1978, Ferguson sent Joyner a note referring to a debt of some $87,000.00. On October 20, Joyner responded as "somewhat confused," and sent along a $16,428.73 check which, he says, brought the account within 60 days "in accord with our agreement." Ferguson replied on October 24 that the balance due was primarily ". . . monthly service charges," and referred to prior discussions of service charges.

Upon consideration of all the evidence presented, it does not appear that there was express agreement that service or finance charges would be imposed. James River seems to acknowledge this when it argues that its position should be sustained under the doctrine of Accounts Stated.

Buchanan, Adm'r v. Higginbotham, 123 Va. 662, expresses the rule, pointing out that there was a prima facie presumption of the correctness of an account which was not disputed after a reasonable time.

Corbin on Contracts, § 1306, bases the Account Stated doctrine on the express reaching of a balance, and agreement thereon between the parties or, in § 1313 on retention of a statement by the other party, without objection made, for more than a reasonable time for its investigation. Corbin points out that the inference arising from such retention may be readily rebutted by other evidence.

It does not seem to this Court that the evidence here fits the doctrine urged by James River. DDI is the offeror with respect to each transaction, and James River accepts by its delivery. After September 1974, no invoice or delivery ticket from James River carried any reference to service charges. The only notation as to terms was "Due Net 10th of Following Month."

While it is true that James River sent monthly statements to DDI, each of which stated that service

charge would be applied to past due accounts, James River knew that these were not being paid, that DDI had expressed dissatisfaction with respect to such charges, and James River continued to accept DDI orders, accompanying the delivery with tickets stating terms as noted above.

In view of the belief that the Account Stated doctrine does not apply, it is not necessary to rely on the provisions of the U.C.C. However, the definition of "goods" in § 8.2-105 is broad enough to cover building materials, and the provisions of § 8.2-207 and § 8.2-208 prevent the incorporation into the sales agreement of any terms in addition to those of the offeror, DDI. The DDI purchase order stated terms "As Agreed" and, over a period of years, the James River delivery ticket and invoice merely said "Due Net 10th of Following Month."

The conclusion, then, is that James River is not entitled to the service, or finance, charge it seeks because the charge has not been shown to be a part of the contract between the parties.

This does not mean that James River is not entitled to interest on the unpaid invoices at the legal rate. Virginia Code § 6.1-330.9; 10B M.J., Interest, § 4, 5. When the unpaid invoices have been identified, interest should be allowed on each from the 10th of the following month.

As counsel are determining the amount of unpaid invoices, nothing further can be accomplished until they have been determined. If counsel reach agreement on that, then an Order in accord with the above can be submitted.