Argued 9 October; decided 29 October, 1900.

### WOLLENBERG v. MINARD.

[ 62 Pac. 532.]

</div>

CONSTRUCTION OF PLEADINGS—EQUITY JURISDICTION.

1. Under the general rule that pleadings should be liberally construed to the accomplishment of substantial justice, *held*, that the complaint in this case was based on the theory that the land in question had been mortgaged by an instrument in the form of a deed, and that the suit was to determine that question, which is a proper subject of equity.

EQUITY—TRIAL ON APPEAL—REFEREE'S REPORT.*

2. Equity suits are tried *de novo* on appeal, and the report of a referee is not binding on the supreme court.

From Douglas: J. W. HAMILTON, Judge.

Suit by H. Wollenberg, administrator *de bonis non* of the partnership property of S. Marks & Co. against R. L. Minard and another. From a decree in favor of plaintiff, defendants appeal.	MODIFIED.

For appellants there was a brief over the name of *Willis & Rice*, with an oral argument by *Mr. Dexter Rice.*

---

*NOTE.—On the question, How far a referee's report is conclusive, see *Nessley* v. *Ladd*, 29 Or. 354.

For respondent there was a brief and an oral argument by *Mr. J. C. Fullerton.*

Mr. Justice Moore delivered the opinion.

This is a suit to subject certain real property to the payment of a judgment. The facts are that on January 14, 1885, the defendant R. L. Minard, for a valuable consideration, executed to Samuel Marks and Asher Marks, partners as S. Marks & Co., his promissory note, payable one day after that date. Samuel Marks having subsequently died, Asher Marks was appointed administrator of the partnership estate, and duly qualified as such. The father of said defendant died testate April 21, 1896, leaving him certain real property in Douglas County, Oregon ; and on April 23, 1896, for the expressed consideration of $1,500, said defendant executed to the defendant A. T. Thompson a warranty deed of all his interest in said real property, which deed was on the next day duly recorded. An action having been instituted by said administrator in a justice's court of said county against Minard on his said note, judgment was rendered therein April 7, 1898, for $105, an attorney's fee of $25, and $2.00 disbursements ; and six days thereafter the administrator filed with the county clerk of said county a transcript of said judgment, which was immediately docketed in the judgment docket of the circuit court for said county. In this suit the complaint alleges, in substance, that the deed executed by Minard to Thompson was intended by them as a mortgage to secure the sum of $500, and to place the property beyond the reach of Minard's creditors, and with intent to hinder, delay, and defraud the plaintiff. The court having denied a motion to strike out the complaint on the ground that several causes of suit therein were not separately stated, and overruled a demurrer predicated on the same ground,

and because the plaintiff had an adequate remedy at law, and that the complaint did not state facts sufficient to constitute a cause of suit, an answer was filed, denying the material allegations of the complaint, and averring that Thompson purchased said property with intent to secure the absolute title thereto in fee simple, paying therefor a valuable consideration, and that he had no knowledge of Minard's indebtedness to the plaintiff or to any other creditors. A reply having put in issue the allegation of new matter in the answer, the cause was referred to Ira B. Riddle, who found from the testimony taken that Thompson was an innocent purchaser of said real property for a valuable consideration and without knowledge of Minard's indebtedness. The court, however, upon plaintift's exceptions thereto, set aside such findings, and found that Minard executed the deed without any consideration therefor, and with intent to cheat and defraud his creditors, he having no other property with which to pay his indebtedness, and decreed that the deed be set aside, and the property sold upon execution to satisfy plaintiff's judgment, from which decree defendants appeal. Asher Marks having died after the appeal was perfected, H. Wollenberg, upon the suggestion of his death, was by order of this court substituted as plaintiff.

1. The allegation that Minard is the owner of said real property, and that plaintiff had secured a judgment against him, which had become a lien thereon, would seem to indicate that the plaintiff had an adequate remedy at law ; but the complaint is undoubtedly based upon the theory that the deed was intended by the parties thereto as a security for the payment of a debt, and hence Minard, notwithstanding the conveyance, must be deemed the legal owner of the property, which might be sold upon an execution issued on the judgment, but, by

reason of the inadequacy of the price it would be likely to bring in consequence of the apparent condition of the title thereto, this suit was instituted to clear away the incumbrance : 5 Enc. Pl. & Prac. 392. The complaint also contains the following averment : "Plaintiff further alleges that the legal title to said real property was by the defendant Minard placed in the name of the defendant Thompson for the purpose of putting the said property beyond the reach of the creditors of the said defendant Minard." It will thus be seen that the complaint is inconsistent, in stating that Minard is the owner of, and that Thompson holds the legal title to, said real property ; but, construing the allegations of the pleading liberally, for the purpose of determining its effect, with a view to substantial justice between the parties (Hill's Ann. Laws, § 84), we are satisfied that the complaint is predicated upon the assumption that the deed was intended by the parties thereto as a mortgage to secure the sum of $500, and no error was committed in overruling the demurrer.

2. It is insisted that the referee, having seen the witnesses and heard them testify, was better able to determine their credibility and the weight of their testimony than the trial court could from an inspection of the transcript, and that, the referee having found for the defendants, the court erred in setting aside his findings. That the referee enjoyed superior advantages in the respects claimed must be admitted (*Lovejoy* v. *Chapman*, 23 Or. 571 32 Pac. 687; *Bruce* v. *Phœnix Ins. Co.* 24 Or. 486 34 Pac. 16) ; but, appeals in equity being tried in this court anew on the transcript, neither the findings of the referee nor of the trial court are binding upon this court.

We have examined the testimony with much care, and conclude therefrom that the findings of the trial court are supported by circumstances which, in our judgment, give

preponderance to the plaintiff's evidence. It appears that Minard was indebted to Thompson in the sum of $500 at the time he executed the deed in question, and that he was then, and has since been, employed by Thompson. The latter testifies, however, that when he secured the deed he had no knowledge of Minard's indebtedness to S. Marks & Co. and others; but, when it is remembered that the deed was executed three days after Minard secured a title to the premises by the death of his father, this fact alone is a circumstance which would seem to attract attention. Thompson further testifies that, at the time he purchased the property, Minard informed him that he might want to repurchase it, to which he replied that if he would repay the $1,500 and interest, and the property had not been sold, he could have it. Thompson borrowed from the Douglas County Bank the sum of $1,100 April 24, 1896, for which he gave his promissory note, with A. C. Marsters as surety. Marsters, appearing as defendant's witness, having testified in relation to the execution of the note, and the payment of some money by Thompson to Minard, was asked the following question: "You say that he paid over some money to Mr. Minard at that time,—how much, do you know?" To which he replied: "The $1,100 that we drew from the bank there, and some money that he had in his pocket. Just the amount, I do not know." Thompson, in speaking of the sum of money borrowed to purchase the property, testified: "I made arrangements with Alvia Marsters to borrow $1,100, and $375 I had in the other bank, and the rest I had in my pocket. I paid him $1,500 on the twenty-fourth of April, and turned the money over to him in the Douglas County Bank."

It will be remembered that Minard owed Thompson $500 at the time he executed the deed, notwithstanding

which Thompson paid him the full consideration for the land; and on cross-examination Thompson said that, after paying Minard $1,500, they settled their accounts, and Minard repaid him what he owed. It seems rather unusual that Thompson, having $400 and Minard's debt of $500, should have borrowed $1,100 to purchase the property, when he needed only $600 for that purpose; and this circumstance gives rise to the inference that the payment of the full consideration was for appearance only, in case Thompson's title should ever be assailed. Thompson exchanged some of the property he thus received with the other Minard heirs, thereby securing an undivided one half interest in a house and two lots in Roseburg, Oregon, which has been occupied by the defendant Minard, whose wife purchased from his sister the other interest therein, taking the deed in her own name. Asher Marks, as a witness in his own behalf, in speaking of a conversation he had with Thompson concerning the property in question, testified as follows: "I asked him if he had purchased the farm from him (Minard), out here in Looking Glass. 'Well,' he said, 'I will tell you the fact. I have got a deed for it.' I says, 'How much did you give for it?' He said, 'I gave him $500.' I said, 'Was that a *bona fide* sale?' 'Well,' he says, 'Of course I got the property in my name. I have got the deed, but whenever he gives me my money back, with interest, I will give him a deed back for the land.'" Judge J. C. Fullerton, plaintiff's attorney, testifies that before commencing this suit he, at Marks' request, saw Thompson, who told him that he let Minard have $800 or $900, instead of $500, as he stated to Marks. From this testimony, and the circumstances adverted to, we think the deed was executed to secure the sum of $500, which has not been repaid. The decree will therefore be modified, and the said premises sold subject to Thomp-

son's lien thereon, the proceeds to be applied—first, to the expenses of sale and the plaintiff's costs and disbursements in this court and the court below; second, to the satisfaction of plaintiff's said judgment; and the surplus, if any, to be paid to whoever may be found entitled thereto by the court below.          MODIFIED.