Argued March 2, decided April 5, 1910.

## RASKI v. WISE.

[107 Pac. 984.]

PLEADING—BILL OF PARTICULARS—STATUTES.

1. Section 84, B. & C. Comp., requiring a party not setting forth in his pleading the items of the account alleged to deliver to the adverse party, within five days after a demand thereof, a verified transcript of the registry of debt and credit is directory only, so far as the time is limited within which a verified copy of the account sued on must be delivered.

PLEADING—BILL OF PARTICULARS—STATUTES.

2. Where a party went to trial in two days after receiving a copy of the account of the adverse party, not delivered within the time fixed by Section 84, B. & C. Comp., without asking for a continuance, the court on appeal must assume that he had sufficient time to examine the account so that the trial court did not abuse the discretion conferred by Section 103 in relieving the adverse party from the default.

EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

3. The books of a merchant are secondary evidence of what is written

therein, and they are admissible to prove an account only when demanded by necessity, which is established by proof of the death or absence of the clerks who kept the books.

EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

4. The rule that books containing the original entries of goods sold and delivered and of payments made on account thereof are the only books admissible, is enlarged by Section 780, B. & C. Comp.,, providing that when an entry is repeated in the regular course of business, one being copied from another, at or near the time of the transaction, all the entries are deemed originals, and a merchant's daybook containing a record of an account, and the ledgers which include a transcript therefrom, are admissible as original entries, but entries made in the ledger from a statement of the separate accounts are inadmissible as against a general objection of incompetency.

MORTGAGES—DEEDS ABSOLUTE IN FORM AS "MORTGAGES."

5. A conveyance of land, absolute in form, accompanied by a contemporaneous instrument executed by the grantee and reciting that on the payment of a specified sum within a specified time the premises shall be reconveyed to the grantor, is a mortgage to secure the payment of a debt.

MORTGAGES—EQUITY OF REDEMPTION—PURCHASE.

6. The maxim "once a mortgage, always a mortgage" does not prevent a mortgagee, by subsequent contract, from purchasing the equity of redemption, or from obtaining a release of it for an adequate consideration.

MORTGAGES—RELINQUISHMENT OF EQUITY OF REDEMPTION.

7. Where a grantee is an absolute deed, subject to the agreement to reconvey to the grantor on the payment of a specified sum within a specified time, sold to the grantor timber on the premises, as evidenced by an instrument executed after the expiration of the specified time, and stipulating for the cutting and removal of logs on the payment of a specified sum per thousand feet, as stumpage, the sale of the timber was not, in the absence of evidence that the compensation was regarded by the parties as an adequate consideration for the relinquishment of the equity of redemption, · and the grantor was not estopped from insisting on a reconveyance.

TRUSTS—EXISTENCE OF RELATION—OBLIGATION OF TRUSTEE.

8. A grantee who accepts a conveyance of the grantor's homestead and timber claim, and who takes on himself the management of the logging and cordwood business for the grantor's use and benefit, occupies a fiduciary relation towards the grantor, and he must keep an accurate account of the trust, and record all the transactions connected with his discharge of the trust.

INTEREST—COMPUTATION.

9. Obligations evidenced by notes given by plaintiff to third persons and purchased by defendant, and by a note given by plaintiff to defendant to evidence pressing demands against plaintiff, which, at his request, defendant liquidated, did not represent mutual dealings between the parties, and interest must be computed at the rate specified in the notes from the time they were respectively executed.

MORTGAGES—ACCOUNTING—REDEMPTION.

10. Where, in a suit for an accounting and to have a deed to realty declared a mortgage, the evidence showed that plaintiff, owning a homestead and a timber claim, conveyed the same ti defendant, who paid off

claims against the grantor, and executed an instrument stipulating that, on the payment within a specified time of the consideration specified in the deed, the premises should be reconveyed to plaintiff, and that sums advanced to discharge mortgage liens on the premises conveyed were treated as items of indebtedness, such sums should not again be charged, and though the payments were made by defendant, so that the liquidation of the obligations was tantamount to their equitable assignment, interest on the indebtedness should not be calculated.

INTEREST—MUTUAL DEBTS.

11. Where mutual debts and credits were never settled, and a balance was never ascertained, there was no money due on a settlement of matured accounts, within Section 4595, B. & C. Comp., relating to interest.

PAYMENT—PRESUMPTIONS.

12. Where one was in possession of orders for the payment of money drawn on himself by another, their payment would be presumed, under Section 788, subd. 13, B. & C. Comp., relating to presumptions.

EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

13. Where entries of purported items of account between parties are not verified by any daybook offered in evidence, nor by any testimony showing that the entries were made at or near the times respectively stated so as to make the volume a book of original entry, the entries must be excluded.

From Clatsop: THOMAS A. McBRIDE, Judge.

This is a suit by Stoffer Pater Raski against Marcus Wise for an accounting and to have a deed; conveying certain lands in Clatsop County, declared a mortgage. From a decree granting insufficient relief, plaintiff appeals. MODIFIED.

For appellant there was a brief and an oral argument by *Mr. George C. Fulton.*

For respondent there was a brief and an oral argument by *Mr. John H. Smith.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is a suit for an accounting and to have a deed to real property declared a mortgage. From a decree permitting the plaintiff to redeem the land within 60 days by paying $6,000, but in default thereof to extinguish all his right to the premises, he appeals. The admitted facts are that on September 26, 1891, the plaintiff, being the owner in fee of a homestead and a timber claim in Clat-

sop County, containing 160 and 120 acres, respectively, conveyed the land to the defendant for the expressed sum of $2,100, and at the same time received from the latter a writing stipulating that upon the payment, within five years, of the consideration specified in the deed, the premises should be re-conveyed to the plaintiff, or to his heirs or assigns, but the defeasance was never recorded. The defendant on October 13, 1902, for the sum of $2,000, sold and conveyed the timber claim to Robert Burch, who had no knowledge or notice of any right of the plaintiff to the land.

The evidence shows that prior to September 26, 1891, the plaintiff, engaged in logging, became indebted to several persons who were urgently demanding their money, whereupon the defendant, then a merchant at Astoria and one of plaintiff's creditors, paid off such obligations, but did not discharge his own, and, for some time after receiving Raski's deed, he operated a camp on the premises and received logs and cordwood taken therefrom. The plaintiff's testimony supports the averments of the complaint, which are, in effect: That the land was conveyed by him pursuant to an agreement that the business should be continued by the defendant, who was to cut sawlogs and cordwood for his own use and benefit, retaining the profits and defraying all the expenses; that he would pay certain sums, as stumpage, for logs, etc., taken from the premises; that he would give the plaintiff certain wages for his services, pay him for boarding the laborers employed, and credit him with such sums on account of the obligations which the defendant so paid in discharging the debt which he held against plaintiff aggregating $2,800; and that the defendant received on plaintiff's account property and services of the following values: To the timber claim, $3,000; to logging tools and implements, $300; to stumpage on logs and cordwood, $8,167.10; to board of defendant's labor-

ers, $1,320; and to plaintiff's labor from September 26, 1891, to January 1, 1896, $2,496—amounting to $15,-283.10, for which sum credit should be given.

The defendant's testimony corroborates the allegations of the answer which, after denying the averments of the complaint, except that plaintiff had been the owner of the land specified, but which he conveyed to the defendant absolutely, states that on September 26, 1891, the plaintiff's indebtedness was $8,526.04, and that he now owes the defendant $10,243.08, which sum does not include the agreed purchase price of the land. As a witness in his own behalf the defendant admits that the business of cutting logs, cordwood, etc., was conducted in his name, but testifies that the supervision resulted from the request of the plaintiff, for whose use and benefit the dealing was managed; that charges were made for all sums of money advanced to the plaintiff and for all goods, wares, and merchandise sold and delivered at his request; that the witness paid the laborers, deducting the amount of their board, which was credited to the plaintiff; and that for all logs, cordwood and other material taken from the land, due credit was given to the plaintiff.

The significant fact which is necessarily decisive of the important issue involved herein, is whether the defendant conducted the business for himself, or operated it for the plaintiff, for, if it was managed for the latter, the charges for stumpage, board furnished, and labor performed, as set forth in the complaint, must be disregarded. We do not think it essential to quote from or comment upon the testimony, a careful examination of which convinces us that the business of cutting logs and cordwood was conducted by the defendant for the use and benefit of the plaintiff. The determination thus reached leaves for consideration the amount of money, if any, due from one party to the other.

1. It is insisted, however, that no attention should be given to any evidence on that subject because the defend-

ant neglected to deliver to the plaintiff a verified copy of his account within the time limited therefor. A written demand for an itemized statement was served June 25, 1903, on the defendant's counsel, who, without any order of the court extending the time, delivered to the plaintiff a copy of such account December 21, 1904, only two days prior to the commencement of the trial of this cause. The statute directs that if a party do not set forth in his pleading the items of an account therein alleged, or file an authenticated copy thereof, he must deliver to the adverse party, within five days after a demand thereof in writing, a verified transcript of the registry of debt and credit, or be precluded from giving evidence thereof. Section 84, B. & C. Comp. The testimony shows that, pursuant to the demand, the defendant caused to be prepared an itemized statement of his account, which for more than a year prior to the trial was delivered to and remained in the possession of his counsel. The attorney referred to testified that when he received the statement he intended to have it verified by his client, but that by reason of the defendant's absence, caused by the sickness of his wife, the authentification could not be obtained at that time, and he thereafter forgot to secure the attestation until the cause was set for trial. A court is authorized, in its discretion, to allow any act to be done after the expiration of the time limited therefor, or by an order to enlarge the time for the performance of the act required. Section 103, B. & C. Comp. It has been held, evidently in contemplation of this provision, that when it satisfactorily appears that a good and sufficient reason existed for the failure of a party to deliver a copy of an account within the time prescribed, he should be relieved of the default. *Rayburn* v. *Hurd,* 20 Or. 229 (25 Pac. 635). So far as the time is limited within which a verified copy of the account must be delivered, the statute is only directory. 31 Cyc. 590; *Robbins* v. *Butler,* 13

Colo. 496 (22 Pac. 803) ; *Silva* v. *Bair,* 141 Cal. 599 (75 Pac. 162).

2. That the statement should have been verified and a copy thereof delivered sooner than was done in the case at bar must be admitted, but as the plaintiff did not ask for a continuance, and went to trial in two days after receiving the account, it must be assumed that he had sufficient time to examine the report of the debt and credits involved before evidence was offered. We conclude that the discretion of the court was not abused in relieving the party from his default.

It appears that the statement of what purports to be the sums of money with which the plaintiff is charged and the credits to which he is entitled, was prepared by Arthur Liebman, an accountant, who testified that in making the report he added items which did not appear on the defendant's books, but for which receipts were found, and that he also omitted items for which no acknowledgments of payment could be discovered, saying that Wise told him, "To go ahead and use my own judgment in making the statement." The bill of items of debit and credit is designated under two captions, as Raski's "Personal Account," and his "Camp and Wood Account," and was over objection and exception received in evidence as defendant's Exhibit U. The personal account commences with what purports to be a copy of a charge made August 27, 1884, and closes February 1, 1895, with a statement of $1,066.05, as the remainder due from the plaintiff to the defendant, and the camp and wood account begins with what seems to be a transcript of a charge made March 20, 1891, and terminates September 26, 1895, with a statement of the balance due from the plaintiff to the defendant of $4,141.79, although items noted as "Omitted to be Charged in Ledger" and under various dates from the beginning of the account to July 17, 1893, are afterwards entered, thus bringing

the balance to $4,820.11. The amount of both these accounts is therefore $5,886.16, which sum, with interest thereon at the rate of 10 per cent per annum, a part of which is compounded, together with $262.59 as taxes imposed on the land, amounts to $12,447.38, after deducting $2,100 as the consideration for the real property conveyed by the plaintiff to the defendant; but if the expressed consideration be taken into account, the plaintiff is indebted to the defendant, so the latter asserts, to the extent of $14,547.38.

3. At the trial there were introduced in evidence a daybook and two ledgers, purporting to be the defendant's memoranda of debits and credits in dealing with his customers. The first entry in the daybook was made July 1, 1889, and the last item was recorded March 2, 1894. A careful examination of Raski's account as noted therein shows that the entire charges made against him amount to $4,107.48, while the credits there allowed him aggregate $1,199.01, thus leaving due $2,908.47. This remainder includes a charge of $198.11 paid to Byron S. Kimball on a promissory note executed to him by Raski and Wise which was discharged by the latter, and also includes the further charge of $1,526.40, for money advanced by the defendant to secure the satisfaction of two mortgage liens on the land that was conveyed to him by the plaintiff. No credit, however, is entered in the daybook of any sums as consideration for the real property. Liebman made up separate statements designed to portray Raski's personal account with Wise and also the items of indebtedness incurred in cutting cordwood and sawlogs and the credits which were acknowledged for the material thus taken from the homestead and the timber claim. These separate statements were evidently compiled from a mass of bills, a part of which is receipted, and the entire collection has been sent up, but it is impossible to say from an inspection thereof or from any testi-

mony relating thereto how many of them were incurred on Raski's account or for his benefit. A duplicate of the several sums of debt and credit of the personal account, as set forth in the separate statements, appears in the defendant's ledger, Exhibit J, at pages 247-250, and of the logging and cordwood account, in his ledger, Exhibit L, at pages 314-320, some of the words being expressed in the German language and others in the English. An examination of these entries indicates that they were apparently written with the same shade of ink, manifestly made at the same time, and obviously copied from Liebman's statement of the separate accounts. That the entries were not made in the defendant's principal books of account or at any ways near the various times when the several items of indebtedness were incurred, or the particular credits appear to have been posted, is conclusively established by the fact that the indexes on the ledgers mentioned, though containing the plaintiff's name, do not indicate either of the pages hereinbefore noted, where such duplicates are now presented to view. Another circumstance which confirms this conclusion is the fact that Liebman, having made several mistakes in computing the separate accounts, such errors in calculation present themselves in regular order in the ledgers. The repetition of the mistakes adverted to could have occurred if the reckoning had been made and the result thereof first entered in the ledgers by Wise, whose ability to write English words is quite limited, since Liebman, who understands the German language as well as the English, might have transcribed the defendant's original memoranda as set forth in the ledgers. A deduction to that effect cannot well be drawn, for Liebman testifies that in making up the account he found with the bills and papers furnished him by Wise, receipts upon which his report is based.

Considering the admissibility of the volumes mentioned, Ben Wise, the defendant's son, as his witness, identified

the daybook and the ledgers and testified that the entries therein were correctly made by his father, himself, and two clerks, one of whom was dead, and that the then residence of the other was unknown, whereupon such books were received in evidence over objection, *inter alia,* that they were incompetent, irrelevant, and immaterial. The books of a merchant are secondary evidence of what is written therein, and they are admissible to prove an account only when demanded by necessity. *Harmon* v. *Decker,* 41 Or. 587, 594 (68 Pac. 11: 1111, 93 Am. St. Rep. 748). In the case at bar the exigency was established by proof of the death of one of the clerks and of the absence of the other. *Friendly* v. *Lee,* 20 Or. 202, 206 (25 Pac. 396) ; *Susewind* v. *Lever,* 37 Or. 365, 368 (61 Pac. 644).

4. The books containing the original entries of goods sold and delivered and of payments made on account thereof were the only volumes admissible to prove such memoranda. Jones, Ev., § 584. Our statute, enlarging the ancient rule of evidence in this particular, contains a clause as follows:

"When an entry is repeated, in the regular course of business, one being copied from another, at or near the time of the transaction, all the entries are equally regarded as originals." Section 780, B. & C. Comp.

The defendant's daybook, containing a record of the plaintiff's account, and the ledgers which include a transcript therefrom, were admissible in evidence as original entries to substantiate a detailed statement of the mutual demands of the parties as to the respective debts and credits. The entries made in the ledger, however, from Liebman's statement of the separate accounts are inadmissible, and the general objection made by plaintiff's counsel, on the ground of incompetency, is sufficient to exclude them. *Ladd & Bush* v. *Sears,* 9 Or. 244, 247.

Ben Wise, referring to the defendant's method of keeping the books, and of the entries made therein of the

account, testified as follows: "I have known father to take the original charge and place it upon the ledger without putting it in the daybook, and it may be possible that he done so on this occasion and other occasions; I don't know which." If the defendant, who was most interested and therefore knew more about the books than any other person, had testified that he made the notations of debt and credit in the ledgers at or near the various times, purporting to have been detailed therein, such entries would have been original, though not made in the daybook, and a very different conclusion as to the value of the ledgers as evidence might have been deduced, for the law does not prescribe the mode of recording items of debt and credit, or require that any particular system of bookkeeping shall be pursued. The defendant, however, did not offer any testimony in relation to his manner of keeping the books or attempt to explain the peculiar coincidences discoverable by comparing his entries in the ledgers with Liebman's separate statement, to which attention has been called, and, such being the case, the only evidence of the dealings between the parties that can now be considered consists of the original entries made in the daybook before us, the transcript thereof in the ledgers, other memoranda that has been properly identified, and such testimony as may tend to explain or prove the account.

5. It will be remembered that when the land was conveyed to the defendant he signed and delivered to the plaintiff a defeasance, which collateral instrument, being construed in connection with the deed, makes it, though absolute in form, a mortgage, since the conveyance was intended as security for the payment of a debt. *Stephens* v. *Allen,* 11 Or. 188 (3 Pac. 168) ; *Thompson* v. *Marshall,* 21 Or. 171 (27 Pac. 957) ; *Adair* v. *Adair,* 22 Or. 115 (29 Pac. 193) ; *Wollenberg* v. *Minard,* 37 Or. 621 (62 Pac. 532).

6. The maxim, "once a mortgage, always a mortgage" is an aphorism of universal application. Jones, Mort. (6 ed.) § 7. This author, at section 340 of the work noted, says: "But this maxim was never intended, and has never been construed, to prevent a mortgagee, by subsequent contract, from purchasing the equity of redemption, or from obtaining a release of it, for an adequate consideration."

7. A sale by the defendant to the plaintiff of timber growing on the land, evidenced by a writing executed March 30, 1897, and after the expiration of the five years specified in the defeasance, and stipulating for the cutting and removal of logs upon the payment of thirty cents per thousand feet, as stumpage, is alleged in the answer by way of estoppel. No evidence was offered tending to show that the compensation thus agreed to be paid for the timber was so insignificant when compared with the then reasonable value of the logs, that it was regarded by the parties as an adequate consideration for the relinquishment of the equity of redemption, and hence such plea must be disregarded.

8. The defendant having accepted a conveyance of the homestead and the timber claim, and taken upon himself the management of the logging and the cordwood business for the plaintiff's use and benefit, thereby created a fiduciary relation which imposed on him the duty faithfully to keep an accurate account of the trust, and strictly to record all the transactions connected with his discharge of the obligation so assumed. 28 Am. & Eng. Enc. Law (2 ed.) 1076; Perry, Trusts (4 ed.), § 821; *Rohr* v. *Pearson*, 16 Or. 325 (14 Pac. 297); *Willard* v. *Bullen*, 41 Or. 25 (67 Pac. 924: 68 Pac. 422). The defendant's account, as prepared by Liebman, may be an accurate statement of the several items of mutual debt and credit, existing between the parties, but that portion of it evidenced by the daybook is practically the only part which in its

entirety is entitled to full credit. Assuming the account thus rendered to be correct, it is certainly lacking in details so far as the plaintiff's rights are concerned, for of 39 references in the separate statements to logs, cordwood, and bark obtained by the defendant from the land, in only two instances is any mention made of the quantity so received.

9. The defendant offered in evidence promissory notes which he held that had been executed as follows: May 3, 1886, to Richard Dealey for $100; January 16, 1891, to F. L. Parker for $180.85; and January 16, 1891, to M. Wise for $826.30—the latter note having been given to evidence pressing demands against Raski, which, at his request, the defendant liquidated. These obligations did not represent mutual dealings between the parties (*Pengra* v. *Wheeler,* 24 Or. 532, 537: 34 Pac. 354: 21 L. R. A. 726), and such being the case interest should be computed at the rate of ten per cent per annum, so specified in the notes, from the time they were respectively executed to April 5, 1910, when the decree in this court was rendered, or $239.21; $346.58 and $1,588.10 thereby augmenting the several principals to $3,281.04, which sum should be charged to the plaintiff.

10. It will be recalled that entries were made in the daybook against Raski of $198.11, paid to Kimball, and of $1,526.40, advanced to discharge the mortgage liens on the premises conveyed. These sums having been thus treated as items of indebtedness should not again be charged, and though the payments were made by Wise to the holders of promissory notes given by Raski, and the liquidation of these obligations was tantamount to their equitable assignment, the interest on such notes should not be calculated, since no credit was originally given on the books for either the expressed consideration of the land or for the sum received from the sale of the timber claim, which if entered on the books would have dis-

charged such indebtedness: *Nodine* v. *Shirley,* 24 Or. 250 (33 Pac. 379).

11. The parties to this suit never settled their mutual debts and credits. Wise testified that Raski did not demand an accounting. As the balance was not ascertained, there was no "money due upon the settlement of matured accounts" (Section 4595, B. & C. Comp.) and for that reason no interest will be allowed the defendant except as hereinbefore noted: *Catlin* v. *Knott,* 2 Or. 321, 322; *Hawley* v. *Dawson,* 16 Or. 344, 349 (18 Pac. 592; *Stemmer* v. *Scottish Insurance Co.,* 33 Or. 65, 83 (49 Pac. 588: 53 Pac. 498) ; *Smith* v. *Turner,* 33 Or. 379, 381 (54 Pac. 166) ; *Durham* v. *Commercial Nat. Bank,* 45 Or. 385, 388 (77 Pac. 902).

12. The evidence shows that on March 20, 1891, the defendant purchased for the plaintiff oxen to be used in the business, paying therefor $700, which sum should be charged to the plaintiff. The defendant's counsel, referring to a box of papers, evidently the memoranda sent up, in which he found a number of orders drawn by Raski on Wise for the payment of money, taking three of them as examples, offered them in evidence, for $11.50, $13.30, and $16.50, respectively, and aggregating $41.30, which sum should be charged to the plaintiff. With but few exceptions, the orders referred to were the only items in this mass of bills, etc., that were identified in any manner by the defendant, but as he was in possession of such orders their payment will be presumed. Section 788, subd. 13, B. & C. Comp. Some of the orders do not state the amount of money for which they were issued, some are not addressed to Wise and others are not signed by Raski, omitting which, we find that the orders properly drawn and in the defendant's possession aggregate $705.70, which sum should be charged to the plaintiff.

13. Entries of what purport to be items of account between the parties, commencing August 27, 1884, are set

forth in the defendant's ledger, Exhibit J, from which it appears that after deducting the payments made by the plaintiff he is indebted to the defendant in the sum of $155.97. The memoranda thus noted is not verified by any daybook offered in evidence, nor was any testimony given tending to show that the entries thus referred to were made at or near the times respectively stated, so as to make the volume a book of original entry. The indebtedness last mentioned will therefore be disallowed. These same items appear again at page 247 of the same ledger, not in consecutive order as noted at page 134 thereof, but as set forth in Liebman's statements of the account, though at the prior page of the volume, after what purports to be a sum of indebtedness against Raski, aggregating $65.33, appears the word "Pad," probably evidencing a settlement, but no mention is made of any adjustment of the accounts at the latter page.

The repetition of the items of the former account conclusively demonstrates that the entries thus made in the ledgers by the defendant were copied from Liebman's statement of the account. The matters thus referred to evidently escaped the attention of the court and counsel who, without any definite proof on the subject, assumed that the entries set forth in the ledgers were duly made. As the trust relation assumed by the defendant imposed on him the duty to keep accurate account, he will be responsible for the items of credit to which he admits Raski is entitled, aggregating $8,236.43, and the money received from the sale of the timber claim, $2,000.

The items of plaintiff's indebtedness hereinbefore mentioned aggregate $9,835.52, and the sum of the credits acknowledged is $11,435.44, thus apparently leaving due the plaintiff $1,599.92. If all the evidence submitted had been legal, the balance of the account would have been in favor of Wise, and for that reason no decree for any part of that sum will be rendered against him, but, as Raski

has made the better showing, he, without any further payment or accounting, is entitled to a reconveyance of the homestead, the value of which, as admitted by the defendant, does not exceed $700.

The decree will be modified in accordance with the view here expressed, the plaintiff to recover his costs and disbursements in this court.  MODIFIED.

MR. JUSTICE MCBRIDE, having originally tried this cause took no part in the consideration thereof in this court.