## SCHOCK et al. v. FISH.

No. 5808.   Opinion Filed November 24, 1914.

(144 Pac. 584.)

1.   QUIETING TITLE—Dismissal. In a suit in equity to cancel a certain conveyance and to quiet title to land, the uncontroverted evidence shows that plaintiff had conveyed all his right, title, and interest in the land to a third party prior to the institution of this suit. Held, the trial court should have dismissed plaintiff's petition.

2.   APPEAL AND ERROR—Reversal—Rendition of Judgment. In an equity proceeding, where it is clearly shown that the court failed to consider uncontroverted competent evidence, or that the finding and decree are clearly against the weight of the evidence, held, said decree is erroneous, and this court will consider the entire record in said cause, weigh the evidence, and render such judgment as the trial court should have rendered.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade 'S. Stanfield, Judge.*

Action by Little Fish against Elmer E. Schock and L. V. Bebee. Judgment for plaintiff, and defendants bring error. Reversed, with directions.

*William M. Matthews,* for plaintiffs in error.

*Herbert E. Smith,* for defendant in error.

RIDDLE, J. The parties will be denominated here as they were in the trial court. Plaintiff filed his petition against defendants, alleging, in substance, that he is a citizen of the Creek Nation, and the father of Mahala Fish, *nee* Hickman, Katie Fish, *nee* Williams, and Winey Fish, Billy Fish, and Miley Fish; that Billy Fish died intestate in October, 1900, while a minor; that on the 23d day of August, 1902, the land in controversey was allotted in his name as his share of the allottable lands of the Creek Nation; that on the 28th day of February, 1910, he, together with his children, Winey, Mahala, Katie, and Frazier and Milley Fish, executed to defendant Elmer E. Schock a warranty deed to the lands allotted in the name of Billy Fish, deceased, for a consideration of $800; that defendant Schock conveyed a one-half interest in said lands to defendant Bebee; that on the 23d day of January, 1912, William Sullivan, as guardian of Frazier and Milley Fish, executed a guardian's deed, conveying to defendant Schock all the right, title, and interest in and to the land in controversy; that none of said deeds were approved by the Secretary of the Interior. He alleges that the signatures to said deeds were obtained through fraud and undue influence of defendant Schock; that said deed is voidable, by reason of mistake of plaintiff as to his right, title, and interest in and to said premises, which mistake induced plaintiff to sign said deed; that he caused his consent to be given by mistake, which consent was had and obtained through fraud and undue influence, exercised by said Schock, and in obtaining said deed from plaintiff by virtue and through the use of the state-

ments by said Schock to plaintiff that plaintiff, as the father of said Billy Fish deceased, and the said brothers and sisters of said decedent hereinabove named, inherited equally an undivided one-sixth interest in and to the land so allotted to the heirs of Billy Fish, deceased, which statements plaintiff believed to be true and relied thereon as true and correct statements of fact and law relating to his title and interest in and to said land.

To this petition, defendant answered, admitting the allotment, the citizenship, and relationship, also admitted that the Arkansas law of decent and distribution controlled the devolution of the property; that defendant Schock purchased the land from plaintiff and his children named for the consideration of $800; that the deed executed by defendant was approved on the 26th day of March, 1911, by the county court of Okmulgee county, Okla. He admits conveying one-half interest in the land to defendant Bebee. To this answer, a general reply was filed. Upon the issues thus formed, the cause proceeded to trial before the court, without the intervention of a jury. Judgment was rendered in favor of plaintiff, canceling his conveyance and quieting title in plaintiff. Defendant prosecutes error to this court, and alleges for reversal ten assignments of error. From the view we take of this case, it will be necessary to consider only the following assignments:

"(6)  The court erred in finding that Little Fish had any right, title, interest in the premises in controversy at the time he executed the deed to plaintiff in error, and in not holding that Little Fish had conveyed all his interest in said premises by virtue of the deed executed to him by Chas. W. Wilson on August 21, 1907."

"(10)  The decision of the court is not sustained by sufficient evidence."

Among the findings of the court is the following:

"The court does not believe nor find from the testimony in this case that the defendant Schock intentionally, at any time, deceived the plaintiff, Little Fish, or ever attempted to deceive

him, but the fact remains that an ignorant full-blood Indian has less idea of what his rights are under the law than the ordinary white man."

It is further shown, from the undisputed evidence that on the 21st day of August, 1907, plaintiff executed and delivered to Chas. W. Wilson a deed of general warranty, conveying to him the land in controversy. It is shown that in the early part of 1911, and more than one year before the filing of this suit, and about a year after the execution of the deed to defendants herein, plaintiff fully recognized the validity of each of these deeds by participating in a settlement, wherein he gave his consent for Wilson to pay to defendant Schock the sum of $354 for and on account of plaintiffs. This payment was made on the ground that, when defendant Schock purchased the interest of Little Fish, he did so, believing that the premises were free of incumbrance, and after ascertaining that Little Fish had, prior thereto, conveyed the premises to Wilson, the matter was settled in the manner before indicated. The conveyance made to Wilson by plaintiffs was introduced in evidence without objection, is regular on its face, and made at a time when there were no restrictions upon the alienation of said land, and conveyed all the right, title, and interest of Little Fish in the premises. It is uncontroverted that he participated in this settlement and expressly recognized the validity of these instruments in the manner indicated herein, and as shown from the following evidence:

Upon the question of settlement, defendant Schock testified as follows:

"Q. State when you communicated the information that you derived from your lawyers as to the interest that Little Fish owned in this land. A. I came back home and found that Charles Wilson had a deed to this Billy Fish land. * * * And later I met Little Fish on the street here, and I told him that Charley Wilson had a deed to this land, and he asked me about the balance of the money, and I told him he had given Charley Wilson a deed to the land. I had thought he owned all of the

land, and I couldn't settle up with them until they arranged it with Charley Wilson, so this could be adjusted and I could get a clear title, and I told him to see Charley Wilson and see about it. * * * Q. Was there any settlement made that day? A. Of the whole matter? Q. Yes. A. No. Q. Was there any settlement made subsequent? A. Yes, sir. Q. What was that settlement? A. I paid all the rest the money that was coming to them, and I think I paid Little Fish some more money. I think part of the Little Fish money was paid to Charley Wilson. Q. Was that on account of the transaction? A. Yes, sir."

Charley Wilson testified in regard to this settlement as follows:

"Q. Did you and he and Sullivan have any kind of a settlement in regard to this piece of land? A. Yes, sir. Q. Well, where was that settlement had? A. Moore & Noble's office. Q. Now, Mr. Wilson, you may go ahead and state anything else that occurred that day between you and Little Fish and Mr. Schock in regard to this land. A. As I remember, Mr. Schock brought Little Fish up to the office and some one as interpreter. I am not sure who the interpreter was, and we talked this matter over, and I told them how much I had paid him, and showed Mr. Schock and Little Fish, and there was an agreement there between us that I was to pay $354 more as my part, and I think I gave Mr. Schock right then for my part the money, and asked him when he got this matter through to deed me the piece of land in Okfuskee county. Q. Well, now, what did you pay Mr. Schock this $354 for? Why did you pay him that? A. As part payment on this piece of land I was getting. Q. Did you get a piece of this Billy Fish land? A. Yes, sir; 80 acres. * * * Q. Now, did Little Fish say anything further to you that day in regard to this land? A. The understanding that I had with Little Fish was that I was to pay this amount to Mr. Schock, and Mr. Schock would make the final settlement with him. That was the understanding before I gave Mr. Schock this check; that I had an understanding with Little Fish that he was to make the final settlement. He said Schock had already paid him some money, and he would make final settlement. * * * Q. Was there anything said that day as to what this $225 should be applied to? A. It was on payment of this land. Q. Did he agree to that? A. Yes, sir. Q. That the $225 that you had given him should be applied on this land? A. That was the understanding I had with Little Fish."

The witness was interrogated on cross examination fully in regard to this settlement.

. Upon this state of the record it clearly shows that plaintiff had no interest in the land on the date of the institution of this suit, and the trial court should have dismissed his petition. *Clark v. Holmes,* 31 Okla. 164, 120 Pac. 642, Ann. Cas. 1913D. 385; *Lewis et al. v. Clements,* 21 Okla. 167, 95 Pac. 769; 1 Encyc. Pl. & Pr. 300. The court, failing to dismiss said cause for the reason indicated, and having considered same on the merits (and it affirmatively shows that the court refused to consider or give any weight to the testimony relative to this settlement between Wilson, Schock, and plaintiffs, and also failed to consider the conveyance executed by plaintiff to Wilson), in so doing, committed prejudicial error, and the judgment is contrary to the law and the evidence.

The question arises whether this court should reverse the cause and remand same for a new trial, or consider the whole case upon the evidence and record before us, and render or cause to be rendered the judgment which should have been rendered by the trial court. This is a cause of action, cognizable in a court of equity, and one which, at common law, could only have been prosecuted in a court of chancery. This court seems to have never been called upon to draw a line of distinction in the procedure upon appeal in law cases, tried by the court without a jury, and in equity cases. We are of the opinion that it is very important that the distinction be recognized and adhered to. .

Section 5258, Rev. Laws 1910, in part, provides:

"When a judgment or final order shall be reversed on appeal, either in whole or in part, the court reversing the same shall proceed to render such judgment as the court below should have rendered, or remand the cause to the court below for such judgment. * * * In cases decided by the Supreme Court, when the facts are agreed to by the parties, or found by the court below, or a referee, and when it does not appear, by exception or otherwise, that such findings are against the weight of the evidence in

the case, the Supreme Court shall send a mandate to the court below, directing it to render such judgment in the premises as it should have rendered on the facts agreed to or found in the case."

This section should be considered in connection with article 7, sec. 20, Constitution, which reads:

"In all issues of fact joined in any court, all parties may waive the right to have the same determined by a jury; in which case the finding of the judge, upon the facts, shall have the force and effect of a verdict by jury."

It is clear to our minds that this section of the Constitution refers to such cases as the parties would have a right to have determined by a jury, and in which cases the finding of the judge of the trial court has the same force and effect as a verdict of a jury; and in all such cases, if there is any evidence tending to sustain the finding of the trial court, the Supreme Court, as has been often held, will not weigh the evidence and ascertain where the weight lies, but will sustain the finding of the trial court. But in purely equity cases this is not true. The court may, in its discretion, submit an issue of fact in an equity case for the determination of a jury. However, the finding of the jury thereon is merely advisory, and it is the duty of the court, if in its opinion the verdict is clearly contrary to the weight of the evidence, to vacate the verdict of the jury and determine questions of fact, according to its own judgment. When a finding of the jury in an equity case is only advisory and not binding on the trial court, it would be unreasonable to hold that the finding of the trial court, upon a question of fact in such case, should be conclusive and binding on the Supreme Court. 3 Cyc. 260, states the rule as follows:

"Under the old chancery practice, suits in equity were tried *de novo* on appeal upon the entire record and evidence; and it has been said that 'the adoption of the Codes scarcely made any impression upon equity cases, so far as their trial in the lower or appellate courts was concerned."

To the same effect, see *Kelly v. Carter,* 55 Ark. 112, 17 S. W. 706; *Miller v. Cook,* 135 Ill. 190, 25 N. E. 756, 10 L. R. A. 292; *Stephens v. Dickinson* (Ky.) 43 S. W. 212; *Fitzpatrick v. Weber,* 186. Mo. 562, 68 S. W. 913; *Wollenbery v. Minard,* 37 Or. 621, 62 Pac. 532; *Chalmers v. Kinard,* 38 S. C. 126, 16 S. E. 778, 895; *Faulkner v. Simms,* 68 Neb. 295, 89 N. W. 171, 94 N. W. 113.

This rule was, in effect, sustained by the territorial Supreme Court in the case of *Overstreet et al. v. Citizens' Bank,* 12 Okla. 383, 72 Pac. 379, wherein, in the first syllabus, it is stated:

"Where fraud is relied upon as the basis for equitable relief, and the trial court, after hearing the evidence, finds that fraud has not been established, the appellate court will not disturb such finding, unless it is clearly against the weight of evidence."

Thus, by inference, it was held in that case that, if the judgment of the trial court is clearly against the weight of the evidence, the Supreme Court will set it aside and decide the cause according to the weight of the evidence. See, also, *Holt v. Murphy,* 15 Okla. 12, 79 Pac. 265.

From the foregoing authorities, the true rule, and which should be recognized by this court, is, in all cases which were cognizable only in a court of chancery, it is the duty of this court to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered. We think this is a reasonable interpretation of the section of the statute quoted, *supra,* and is conducive of a more speedy determination of litigation. It will no doubt, often save the expense and trouble of a second trial in the lower court, a second appeal, and a further consideration by this court. There is no sound reason to be urged against this rule. There are many reasons why this should be the rule. It is necessary that the court examine thoroughly the entire record to ascertain if prejudicial error has been committed and injustice

done. Having familiarized ourselves with the record in order to ascertain the rights of the parties, we have the same opportunity and authority to do equity between the parties and finally determine the controversy by rendering a decree as the trial court would have upon another trial, or as we would upon a second consideration of the cause. Why put the parties to the expense and trouble of a second trial, for no purpose, except for this court to have an opportunity to again re-examine the case to ascertain if prejudicial error has been committed? It is clear that the judgment of the trial court is against the weight of the evidence in this case. As we have shown, the undisputed evidence shows that plaintiff had no interest in the lands in controversy on the date of the institution of this suit. And, in addition to this, the court specifically found that there was no fraud or deceit practiced by defendant Schock, and there is no evidence tending to show there was any mutual mistake. If any mistake was made, it was a mistake of law solely on the part of plaintiff as to the interest he inherited in the land. There was no mutual mistake shown; and, the issue of fraud having been determined against plaintiff, there is no foundation for the judgment. Under certain circumstances, a mutual mistake of law may be sufficient to warrant a court of equity in granting relief; but the authorities do not go so far as to hold that where one party, not induced by fraud or undue influences of the other, may be granted relief solely on account of a mistake of law, as to his interest or as to his right in property, where no other facts or circumstances are present sufficient to confer jurisdiction upon a court of equity. 1 Story, Eq. Jurisprudence, pp. 120, 121, 122, 123, 126, 127; *Hope v. Bourland*, 21 Okla. 864, 98 Pac. 580; *Owen v. Tulsa*, 27 Okla. 264, 111 Pac. 320.

The question as to whether or not a different rule should be laid down by this court governing the transactions of Indians from that of other people is not now before us for consideration, and we defer expressing any opinion in regard thereto.

We are of opinion, however, that, in the consideration of all

issues relative to fraud or deceit practiced upon the individual members of the Indian tribes, their ignorance relative to their rights, their lack of education and understanding of our form of government and legal procedure, may and should be considered by the court, together with all other facts and circumstances in determining an issue of fraud; but this does not necessarily mean that a different rule should be announced to be applied, especially to that class of people.  Members of other races, similarly situated, should have the same consideration.

From the foregoing, the judgment of the trial court is reversed and vacated, with direction to render judgment upon the record in this case for defendants.

All the Justices concur, except KANE, C. J., absent and not participating.